SHUTE v. GOSLEE. See Case No. 8,958.

SIBLEY (BALDWIN v.). See Case No. 805.

SIBLEY (DIBBLE v.). See Case No. 3,883.

---

## Case No. 12,829.

### SIBLEY v. MOBILE.

[3 Woods, 535; [1] 4 Am. Law T. Rep. (N. S.) 226.]

Circuit Court, S. D. Alabama. Dec. Term, 1876.

RAILROAD COMPANIES—MUNICIPAL AID—LEVY OF TAX—CONSTITUTIONAL LIMIT—EXHAUSTING POWER.

1. Where an act of the legislature authorized a city to issue its bonds in aid of a railroad company, and ratified a contract by which the city, having issued its said bonds, agreed to appropriate sufficient moneys from its treasury to pay the accruing interest thereon, the city was thereby authorized to levy a tax to pay said interest, and such authority carried with it the duty to make the levy.

2. But when, at the time of the issue of the bonds, the constitution of the state limited the taxing power of the city to a certain per centum upon its taxable property, the city could not exceed that limit; but having first levied a tax sufficient to pay its current expenses, it was bound by its contract to exhaust, if necessary, the residue of its taxing power in order to pay the interest on said bonds.

3. Where such a constitutional limit to the taxing power existed, it was not competent for the legislature, by an act passed after the issue of said bonds, to direct that the entire taxing power of the city should be exhausted for the payment of the holders of bonds of another issue who had no specific claim upon the fund raised by taxation, or any part thereof.

4. Where the taxing power of the city was limited by the constitution, all the holders of the bonds issued by the city were entitled to share pro rata in the general fund raised by taxation, which remained after the payment of the current expenses of the city.

5. A city with a limited power of taxation which, by neglect to levy and collect taxes, has permitted the interest on certain of its bonds to fall in arrears, cannot defend against an application for the writ of mandamus to compel the levy of a tax to pay a judgment recovered for interest due on bonds of a later issue, by alleging that a levy to pay the interest in arrears on the older issue would exhaust its taxing power, when at the same time it expresses no purpose to levy a tax for that object.

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Heard on motion for peremptory mandamus. The case was as follows:

On February 23, 1876, the plaintiff recovered in this court against the city of Mobile a judgment for $23,560. The judgment was based on five hundred semi-annual interest coupons for $40 each, which had been originally attached to one hundred bonds for $1,000 each, issued by the city of Mobile in aid of the Mobile & Alabama Grand Trunk Railway Company. The authority to issue these bonds was based on an ordinance of the city dated June 25, 1869, and afterwards, and before the issue of the bonds, confirmed by an act of the legislature of Alabama, dated January 17, 1870. The ordinance, after setting out the terms of a contract between the city of Mobile and the railroad company, by which the city agreed to loan its bonds to the latter, authorized the issue of bonds, and declared that "the city shall be bound to appropriate sufficient moneys from its treasury to pay the interest provided to be paid by the city," to be raised at the option of the city by general or special tax. The act of the legislature, after first approving the ordinance and a contract for the issue of the bonds made by the city with the railroad company in pursuance of the ordinance, and declaring said contract "legal and binding on the city," enacted as follows: "The corporate authorities of said city of Mobile shall have and they are hereby invested with power and authority to adopt such ordinances, by-laws, and resolutions, and to provide such ways and means as shall be necessary or proper for the full execution and performance of said contract so made with said railroad company." The bonds having been issued in pursuance of the authority conferred by the ordinance and the act of the legislature, were put in circulation, and the city having five times made default in the payment of the semi-annual interest, suit was brought upon the dishonored coupons, and the judgment above mentioned recovered. Execution was issued on the judgment and returned unsatisfied, whereupon a demand was made upon the city authorities that they should levy a tax to pay the judgment, which they refused to do. Thereupon, according to the practice in the state courts of Alabama, a petition was filed against the city of Mobile, asking for a rule nisi upon the city, calling upon it to show cause why the peremptory writ of mandamus requiring it to levy tax should not issue. The rule was allowed, and the city filed its answer thereto.

The answer denied that it was the legal duty of the city to levy the tax, and in support of this averment stated, that by the constitution of the state of Alabama, in force when said ordinance and act of the legislature were passed, and said bonds issued, the city of Mobile was restrained from collecting a greater tax than two per centum upon the assessed value of its taxable property, and by the constitution now in force, the same limitation of the power of the city to tax still existed, with this additional provision, that for the payment of its existing indebtedness the city could levy not more than one per cent upon its taxable property, and for its current expenses not more than one per cent. The answer further alleged that over and above the sum necessary for the expenses of the city government, there could be collected for the year 1877, under the limitations of the constitution of Alabama, not more than $145,000, applicable to the payment of the city debt; that there remained due and unpaid of the principal of a series of bonds issued by the city, by authority of an act of the legislature passed in 1843, the sum of $3,100, and four years' accrued interest, amounting to $3,600, and that for the payment of the said principal and interest, the taxes upon the real estate of the city were pledged and appropriated. That there was also outstanding and unpaid of the principal of a series of bonds issued by the city, by authority of an act of the legislature passed in 1858, the sum of $137,000, besides four years' arrearages of interest, amounting to $43,840, making a total of $180,840, to provide for which, and the annually accruing coupons, the city was bound, under its contract, and by virtue of the act of the legislature aforesaid, to provide, by an annual tax, a sum at least proportional to the original amount; that is to say about the sum of $17,000. The answer further stated, that on January 1, 1876, the bonded debt of the city, principal and interest, amounted to $3,332,901, of which $880,094 were for bonds and interest thereon, issued to the Mobile & Alabama Grand Trunk Railroad Company, and of which the debt claimed by the relator formed a part; that it was impossible for the city, with the means at its command, to pay this debt, the annual interest on which amounted to $200,000, while the maximum of taxation allowed for all purposes on the taxable property of the city, would only produce a sum not exceeding $340,000. The answer further alleged that a compromise of the debt was all that was practicable; accordingly, the legislature of the state, by an act approved March 9, 1875, had provided for the reduction and funding of the debt of the city. The act authorized the city to issue $2,000,000 of coupon bonds, for the purpose of settling and funding its debts, and created a contract lien "on the yearly revenues of the city, to be raised by taxation each year, to the extent necessary to pay the interest on said bonds due and falling due each year, and to raise a sinking fund of $50,000 each year for the payment of the principal of said bonds." And the said act restricted the power of the city to levy taxes to the raising of such amounts as might be necessary to discharge the interest on the bonds therein provided for, and for the said $50,000 for the sinking fund, and for such sum as might be necessary to pay the current expenses of the city government. The answer further alleged that $1,185,500 of bonds had been issued under the

said act of March 9, 1875, and that the city was compelled to raise for the current year, under said act, the sum of $121,130, which was declared to be a lien on the revenues of the city raised by taxation; that the funding and adjusting of the city debt was still in progress, and other bonds were being issued, so that the amount to be raised for interest was being continually increased.

The city, therefore, affirmed that all its powers to levy taxes to pay debts would be entirely exhausted in the effort to provide for those classes of its bonded debt for which special provision had been made under authority of the legislature, and that no margin would be left out of which to pay debts not thus provided for, and relator's coupons belonged to a class of debts for which no special provision was made. The city, therefore, insisted that it had not the power or authority to levy the taxes which the relator prayed the court to require it to levy. When the acts of 1843 and 1858, above referred to, were passed, there was no constitutional limit on the taxing power of the city.

To this answer of the city the relator demurred, and upon this demurrer the case was argued and heard.

Geo. N. Stewart and Harry Pillans, for relators.

Stevens Croom, City Atty., and Peter Hamilton and J. A. Hamilton, for the city of Mobile.

WOODS, Circuit Judge. The act of the legislature of January 17, 1870, conferred ample authority upon the city of Mobile to issue the bonds from which the coupons of relators were detached, and even without express authority to that effect, implied an authority to levy a tax for their payment. Loan Ass'n v. Topeka, 20 Wall. [87 U. S.] 655; Gibbons v. Mobile & G. N. R. Co., 36 Ala. 439; Ex parte Selma & G. R. Co., 45 Ala. 696; Ohio v. Commissioners, etc., of Clinton Co., 6 Ohio St. 280; U. S. v. New Orleans [Case No. 15,871]. Besides the implied power there is an express agreement, on the part of the city, set out in the ordinance of June 25, 1869, and approved and ratified by the legislature, by the act of January 17, 1870, by which the city bound itself to appropriate sufficient moneys from its treasury to pay the interest, and reserved to itself the right to raise the same by special tax, which reservation was also approved by the same act of the legislature. The city acted upon this authority, and, as its answer shows, for several years levied a special tax to pay the interest on the bonds issued to the Mobile & Alabama Grand Trunk Railway Company. The authority to levy the tax for the payment of the interest on these bonds carries with it the duty to make the levy. The power to levy the tax is in the nature of a trust for the benefit of the holder of the bonds. The rights of the creditor and the ends of justice demand that it should be exercised in favor of affirmative action, and the law requires it. City of Galena v. Amy, 5 Wall. [72 U. S.] 705; High, Extr. Rem. § 397; Supervisors v. U. S., 4 Wall. [71 U. S.] 435. When the bonds which relator holds were issued, the law authorized, and, in effect, required, the levy of a tax to pay the interest thereon as it accrued. This law formed a part of the contract as much as if it had been written on the face of the bonds. Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175; Von Hoffman v. Quincy, 4 Wall. [71 U. S.] 535; Gunn v. Barry, 15 Wall. [82 U. S.] 610; Commissioners' Court of Limestone Co. v. Rather, 48 Ala. 446; Milner v. Pensacola [Case No. 9,619]. The city of Mobile, by its ordinance, confirmed by act of the legislature, has agreed to pay the interest on those bonds semi-annually, either out of its general revenue or by special tax. This contract is, of course, subject to the constitutional limit upon the taxing powers of the city restricting it to a levy not to exceed two per cent per annum.

The question is, therefore, presented by the demurrer to the answer, whether it was competent for the legislature, by an act passed subsequent to the issue of these bonds, to exhaust all the taxing power of the city, and direct the application of the proceeds of such taxation to other subjects, to the exclusion of the issue of bonds of which the relator holds a part. After authorizing the city to issue these bonds, and after approving the contract of the city to pay the interest semi-annually, either by a general or special tax, can the legislature authorize and direct that all the taxing power of the city shall be exercised for the benefit of the holders of other bonds who have no specific claim upon the funds raised by taxation, or any part thereof, to the exclusion of these? In my judgment, such an act would be a violation of the rights of the holders of the bonds thus excluded, and an impairment of their contract with the city of Mobile. These bondholders are entitled to have all the taxing power of the city within the constitutional limit exercised, if necessary, to secure the performance of the contract made by the city with them. When that power is exercised, the current expenses of the city must be paid out of the fund so raised, and, as to the residue, the relators are entitled to share pro rata with the other creditors of the city who have no specific lien or claim to any portion of the taxes; and neither the city nor the legislature has the power to appropriate the taxing power of the city for the exclusive benefit of a class having no superior rights, while these relators have a contract in effect declaring that a part of the taxing power of the city shall be exercised for their benefit.

It appears, from the answer of respondent, that certain sums are due the holders of bonds issued under the acts of 1843 and 1858, for unpaid interest, and the answer avers that if these sums are paid, and also the sum

required by the act of 1875, the taxing power of the city for the current year will be exhausted. But there is no averment that it is the purpose of the city to levy any tax to pay the past due interest referred to; and, excluding taxation for such purpose, it appears that the city will not exceed its power to tax, if it should levy a sufficient sum to satisfy the judgment of the relators. Moreover, the bonds issued by authority of the acts of 1843 and 1858, cannot be affected by the limit imposed on the taxing power of the city by a constitution adopted after the issue of the bonds. These relators are here pressing their right to be paid by taxation. The city cannot protect itself from its obligation founded on its own contract to levy the tax, by showing that it has failed in former years to do its duty by its creditors, and allowed interest to accumulate, while at the same time it expresses no purpose to levy a tax to pay such interest due and unpaid.

In my judgment, the facts set up in the answer of the city of Mobile constitute no reason why the writ of mandamus asked for by the relators should not issue. The demurrer to the answer is, therefore, sustained.