[S. F. No. 1435. In Bank.—October 3, 1899.]

ALBERT MEYER, Appellant, v. A. C. WIDBER, Treasurer, et cetera, and GEORGE T. BOHEN, Intervenor, Respondents.

DUPONT STREET BONDS—DEMAND FOR PAYMENT—PREFERRED CLAIM.— Under the act of 1876 for the improvement of Dupont street, in San Francisco, a mere demand upon the county treasurer

for the payment of bonds and coupons issued thereunder,
which is not followed by any legal proceeding to enforce pay-
ment, whether there be, or be not, at the time money on hand
to pay them, does not give to the person making the demand a
preferred claim to moneys in the county treasury passed to the
credit of the bond and coupon funds. [Beatty, C. J., Temple,
J., and Henshaw, J., dissenting.]

ID.—APPLICATION OF MONEY IN TREASURY — MANDAMUS — REFUSAL OF
PRIOR DEMANDS.—A holder of such bonds making demand for pay-
ment of money in the treasury applicable to the payment there-
of is entitled to a writ of mandate against the treasurer; and
payment thereof cannot properly be refused on the ground that
prior demands had been made upon the treasurer by the hold-
ers of other bonds, to whom payment had been refused, and
who had taken no steps to enforce their claims. [Beatty, C. J.,
Temple, J., and Henshaw, J., dissenting.]

ID.—MONEYS HELD IN COUNTY TREASURY—CERTIFICATE OF AUDITOR ES-
SENTIAL.—No moneys held in the county treasury by the treasurer
are subject to the payment of demands, unless received therein
upon the certificate of the auditor required by sections 4145
and 4217 of the Political Code.

ID.—SPECIAL DEPOSIT IN SEALED BAGS—SETTLEMENT OF TAX COLLECTOR
WITH AUDITOR—POWER OF TREASURER.—Moneys collected by the
tax collector applicable to Dupont street bonds and coupons,
which are mingled with other tax moneys, and left in sealed
bags with the treasurer, prior to the settlement of the tax col-
lector with the auditor, are a quasi special deposit. The treas-
urer has no duty to investigate as to such moneys, and has no
authority to pay out any part thereof on any demands until
such settlement is made, and the moneys are placed to the
credit of the proper funds upon the certificate of the auditor.

ID.—DELAY OF TAX COLLECTOR—RIGHTS OF BONDHOLDER.—The delay of
the tax collector in making his settlement with the auditor
cannot confer the right upon a bondholder to compel payment
by the treasurer of bonds and coupons prior to the settlement.
He should first compel such settlement before making his de-
mand upon the treasurer.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial.   William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Rosenbaum & Scheeline, for Appellant.

Harry T. Creswell, City and County Attorney, for A. C.
Widber, Treasurer, Respondent.

Robert Harrison, for George T. Bohen, Intervenor, Respondent.

GAROUTTE, J.—*Mandamus* to compel the payment of certain Dupont street bonds and coupons. Under an act of the legislature, approved March 25, 1876 (Stats. 1876, p. 443), the city of San Francisco was authorized to widen Dupont street, and to issue bonds in payment of damages to owners of property on said street. The bonds were each for the sum of one thousand dollars, and the coupons called for thirty-five dollars each. Plaintiff was the owner of twelve of these bonds, and four hundred and eight coupons. Intervenor Bohen was the owner of sixteen bonds and thirty-two coupons. Plaintiff made his demand for payment upon defendant July 3, 1897, and, upon his refusal to pay, brought this action the same day. Intervenor Bohen made his demand July 28, 1897, and filed his intervention September 15, 1897.

It is somewhat difficult to state precisely from the facts found the dates when funds were paid in and became applicable to demands made upon them by bond and coupon holders and the amounts thus applicable at different dates. As the judgment and order must be reversed, it will serve all practical purposes to decide the questions of law presented.

1. When plaintiff made his demand, there was money to the credit of both the bond and coupon funds which might have been applied in payment thereof, but defendant refused payment because, prior to plaintiff's demand, other holders of bonds and coupons had made demand and been refused. The claim of defendant seems to be that the first presentation of bonds or coupons after he had received money belonging to the Dupont street fund gave to the said party a preferred claim against the fund which continued indefinitely, whether or not, upon being refused payment, he followed up his demand by repeating it or by instituting legal proceedings to enforce it. The judgment of the court rests in part upon the adoption of this theory. And the court held that, although there was a considerable amount of money to the credit of these funds on and after January 1, 1897, and at the time plaintiff made his demand, it could not be used to pay plaintiff, because prior to January 1st other demands had been made and were refused and stood as valid and,

preferred claims against the funds. There is nothing in the Dupont street act giving preference to holders of bonds or coupons in the order of their presentation to the treasurer, whether there be or be not at the time money on hand to pay them. Section 13 of the act provides that: "When collected, the said money shall be paid over to the treasurer of said city and county to constitute a part of the 'Dupont street fund,' and to be paid out by said treasurer only in payment," et cetera.

The demand upon the treasurer, when he had funds applicable for the purpose, gave the parties demanding, upon refusal of their demand, the right to a mandate against him. (*Meyer v. Porter*, 65 Cal. 67.) But these first demandants have never brought any action to enforce their claims. Perchance they never will. It may be that their claims have been abandoned, or it may be that they have been satisfied through some other channel. The law itself provides other ways by which their claims may be satisfied. There is money in the fund which has been there at least six months. The first demandants do not attempt to get it, and, as we have seen, probably do not want it. If other demandants may be found at the expiration of each respective four years equally as complaisant, then the money never can be taken from the treasury, even though this plaintiff and this intervenor were ready and anxious at all times that it should be applied to the payment of their bonds. It is not just nor right to compel these parties to wait four years before the law will allow them to ask that this money be applied to the payment of their bonds and coupons, and thus be deprived of its use for that length of time. We know of no law that stamps a portion of this fund as sacred for four years to a party who makes demand for the payment of his bonds, simply by the mere force of the demand itself. The Dupont street statute does not say anything of the kind, but does say, in effect, that the entire issue of bonds stands alike and is entitled to be paid at the same time. It was distinctly held in *Meyer v. Porter, supra,* that the fact that there were other creditors interested in the fund who have not demanded payment is no answer to the petition of a creditor who makes application for payment. We cannot see that such creditor improved his situation under the act in question by demand alone. Such demand was the condition prece-

dent to the bringing of the action. The demand gave him the right to bring the action against the treasurer, and nothing more. There is no law requiring a record to be kept of the respective dates when demands may be made upon the treasurer for the payment of these bonds. The treasurer succeeding the present incumbent will have no knowledge whatever of any demands outstanding against the bond fund when he assumes his office. And at that time, if there be money in the fund, and demand be made upon him for the payment of certain bonds, we cannot see how he would be justified in refusing to apply these moneys to the payment of such bonds. We conclude that the court erred in holding that plaintiff could not be paid because of these outstanding and unenforced obligations. Who these creditors are, or when they made demand, we do not know. It is only found by the court that they made their demands before January 1, 1897, and it does not appear that they at any time thereafter took any steps to enforce their claims.

2. At the time plaintiff made his demand certain money had been deposited with the treasurer by the tax collector; a portion of this money was collected on account of the Dupont street fund, but it was unsegregated and had not yet been placed to the credit of that fund, and the court held it not applicable to plaintiff's demand. Plaintiff claims that this was error. The evidence as to this money was that from May 19, 1897, to July 3, 1897, sundry sums at different times were deposited in the treasury by the tax collector with the treasurer, in certain bags, "and contained, among other tax moneys, sums collected by him (the collector) for and on account of said Dupont street fund." The above sums of money were "contained in sacks, mingled with and unseparated from the other moneys collected by said tax collector on the same days as and for general taxes of said city and county, unrelated to said 'Dupont street fund'; . . . . the only mark on said deposits . . . . being a tag affixed to each sack, stating the quantity and character of the money in such sack contained," and receipt was accordingly taken. These deposits remained "undisturbed and without segregation until the twenty-seventh day of July, 1897. On July 26, 1897, the said tax collector made his report to and settled with said treasurer and auditor for all his transactions and receipts of taxes since

his preceding report and settlement thereof." The report thus settled showed "that of all deposits made by him in said treasury . . . . the sum of forty thousand five hundred and eighty-nine dollars and twenty-six cents contained therein had been collected by him for and on account of said 'Dupont street fund.' That report conveyed . . . . to said treasurer the first knowledge or information of the contents of said bags, . . . . that they contained any moneys belonging to said 'Dupont street fund,' . . . . but said treasurer, by inquiring, could have ascertained from the tax collector's books how much money belonged to said Dupont street bond and coupon funds, and said tax collector's books contained said facts." In these bags were certain coupons aggregating six thousand five hundred and forty-five dollars, surrendered by the collector as money under the act, which, deducted from the forty thousand five hundred and eighty-nine dollars and twenty-six cents, "left in money seventeen thousand one hundred and thirty-two dollars and seven cents in said coupon fund, and sixteen thousand nine hundred and twelve dollars and nineteen cents in said bond fund," and receipts were accordingly exchanged and the receipts for the sacks taken up. The court held that this money was not applicable to the payment of plaintiff's bonds and coupons, but was applicable to the payment of Bohen's, and we agree with this contention.

The question of law presented by the second proposition under discussion is: Was this money, which was deposited by the tax collector in bags with the county treasurer, money which the treasurer was authorized at the time of the demand to use in the payment of Meyer's bonds? In other words, was it at that time, in the eyes of the law, money in the Dupont street fund? We are clear that it was not such money. The money in these bags was held by the treasurer simply as a quasi special deposit. The treasurer had no authority to pay it out at the demand of anybody, or at the expense of any fund. Section 3753 of the Political Code provides: "On the first Monday in each month the tax collector must settle with the auditor for all moneys collected for the state or county, and pay the same to the county treasurer, and on the same day must deliver to and file in the office of the auditor a statement under oath, showing: 1. An account of all his transactions and receipts

since his last settlement; 2. That all money collected by him as tax collector has been paid."

Section 4217 provides: "The auditor must examine and settle the accounts of all persons indebted to the county, or holding moneys payable into the county treasury, and must certify the amount to the treasurer, and, upon the presentation and filing of the treasurer's receipt therefor, give to such person a discharge, and charge the treasurer with the amount received by him." It will thus be seen that all moneys passing from the tax collector to the treasurer must go *via* the auditor's office. It is only upon the certificate of the auditor that the treasurer may receive money which may be used in the payment of claims against the city and county. And it is only upon the receipt of the certificate accompanied by the money that the treasurer is authorized to place it to the credit of the various funds. Section 4145 of the Political Code declares in terms that the treasurer "must receive no money into the treasury unless accompanied by the certificate of the auditor provided for in section 4217." It is from the face of this certificate that the treasurer obtains the information which enables him to physically separate the money into the respective amounts to which the various funds are entitled. When the demand was made in this case the bags of money were sealed. Probably the treasurer had not even the right to break those seals; but, even conceding he had the right to break them and had exercised that right, it was not possible for him to even then say that a particular part of the money was money belonging to the Dupont street fund. He did not know that fact, and could not know it until the auditor's certificate showing a settlement with the tax collector had been presented to him. He was not called upon to undertake an investigation looking to the sources from which the money held in those bags came. He was not required to take anybody's word for it. Neither was he required to rely upon another officer's books for the information. Reduced to its simplest form, the proposition may be stated that no moneys held in the county treasury by the treasurer are subject to the payment of demands unless those moneys have come into the county treasury upon the certificate of the auditor. The money in these bags did not come that way. The fact that the tax

collector delayed for three months to make his settlement with the auditor is not material here.   Meyer, before making his demand upon the treasurer, could have readily required the tax collector to make his settlements as expressly demanded by the law.

It appears from the record  that certain other actions were brought by various persons, the judgments in which  depend more or less upon the decision in this case.   We are unable, from the facts found, to clearly define the rights of these persons. It seems, however, to be conceded that a decision upon the two points already noticed will enable the learned judge to easily dispose of the remaining cases as well as the case appealed.

The judgment and order should be reversed, with direction to the court below to take such further proceedings as will be in accordance with this opinion.

It is so ordered.

Van Dyke, J., Harrison, J., and McFarland, J., concurred.

BEATTY, C. J., dissenting.—I dissent.   The grounds upon which the judgment of the superior court are reversed are, in my opinion, absolutely inconsistent with the fundamental proposition upon which appellant's right of action is based.   He proceeds by *mandamus,* and therefore assumes, and must maintain, that his demand for payment of his bonds and coupons cast upon the defendant the duty to pay them as far as the funds in his hands would suffice.   But if a demand upon the treasurer made it his legal and imperative duty to pay, then it was his legal and imperative duty to pay those who presented the first demands, and, as their demands were more than sufficient to exhaust the fund, it could not be his duty to pay to appellant the identical money which he was already bound to pay to others unless they had in some manner forfeited their rights.   It devolved upon the appellant, therefore, to show that when he commenced this proceeding those who had made prior demands upon the treasurer had in some way lost the right of action which accrued to them when their demands were refused, for if their right of action remained—if it was still the duty of the treasurer to pay them—it could not be his duty to pay the appellant. How, then, and at what time, did those other parties lose their

right of action? This question the appellant has essayed, but failed, to answer. It is not pretended that it was barred by any statute of limitations, but it is said that they were guilty of inexcusable laches, because they waited six months without commencing proceedings by *mandamus.* No authority is cited by the court which has the remotest tendency to support this position, and those cited in the brief of appellant are decidedly against him. They show undoubtedly that the right to proceed by *mandamus* may be forfeited by laches, but they also show that in determining what will be deemed laches the courts are guided by the analogies furnished by the statutes of limitations, which in this case would permit a delay of four years in commencing the proceeding after the right accrued. The general doctrine, and the grounds of it, are briefly stated in section 87 of Merrill on Mandamus, as follows: "The courts require those who would avail themselves of the assistance of this writ to be prompt in demanding the enforcement of their rights. By lapse of time the necessary evidence is lost, and third parties may acquire rights growing out of the existing state of affairs. Where the parties have been guilty of unreasonable delay in applying for this writ, the courts have not hesitated to refuse such relief, unless the delay was accounted for to their satisfaction. In determining what will constitute unreasonable delay, regard should be had to the circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendant or of other persons have been prejudiced by such delay."

To apply this doctrine let us consider the nature of this case, and the only relief which the holders of the coupons and bonds could have demanded. In cases where an action will lie on such obligations the action is barred by the statute in four years, and by the analogy of the statute a *mandamus* to enforce payment would be defeated by a delay of four years. If, under the circumstances, the lapse of a shorter time involved the loss of material evidence, or if rights of third parties were adversely affected, relief might be denied on that ground. But here is no pretense that any evidence was, or could be, lost in six months or six years. Nor was any right of any third party adversely affected. It was no injury to Meyer or any other claimant upon

the fund if those who had secured the first right to the money then on hand chose to let it lie in the treasury. They alone were injured by the delay.· The city and county was not injured, because it is in no event liable for any part of the debt. The fund was not depleted, and could not be, for the coupons are not bearing interest (*Bates v. Gerber*, 82 Cal. 550), and nothing is paid out of the bond fund except the face of the bonds. The court, however, holds, against the clear result of the authorities, that six months' inaction on the part of these claimants has worked a forfeiture of their rights. But if six months is fatal, why is not six weeks fatal? Or six days? Or one day? Where will the line be drawn, and upon what principle is the distinction to rest? After how short a delay in bringing suit will we conclude that perchance the party will never sue, or that his claim has been abandoned, or paid through some other channel? These presumptions in which the court indulges are without anything in the record to sustain them, and are against all probability, as they are against the correctness of the judgment of the superior court.

Nor has it been pointed out how the law itself (the Dupont street act) has provided other ways by which their (the .prior demandants') claims may be satisfied. Nor have I been able to see, as the court does, that they probably do not want their money. Is it upon such fanciful suppositions as these that a judgment of this court can be securely rested?

The truth is, the doctrine of this case, carried to its logical conclusion, will permit the custodian of a fund in the position of this defendant to pay or refuse to pay those who make demands as his fancy inclines. As long as he is not sued he may refuse one and pay another, irrespective of the order of their demands, or he may refuse them all until some favored claimant serves him with a writ of mandate. The doctrine is, in my opinion, without reason to support it, and is pernicious in its consequences.

Temple, J., and Henshaw, J., concurred in the dissenting opinion.