[Civ. No. 4628. Third Appellate District.—April 26, 1932.]

CHARLES D. BATES, Petitioner, v. J. R. McHENRY, Treasurer, etc., Respondent; BANKS, HUNTLEY & COMPANY (a Corporation) et al., Interveners.

Bronson, Bronson & Slaven and James F. Peck for Petitioner.

Stephen W. Downey, Hugh K. Landram and C. Ray Robinson for Respondent.

Orrick, Palmer & Dahlquist for Interveners.

PLUMMER, J.—The petitioner in this action is the owner of 94 bonds of the Merced Irrigation District, a district duly organized and existing under and by virtue of the laws of the state of California, of the par value of $94,000, upon which there became due and payable on the first day of January, 1932, the sum of $2,820 as interest thereon, evidenced by coupons attached to said bonds. The intervener, Banks, Huntley & Company, was, on the first day of January, 1932, the holder of interest coupons on bonds issued by said district in the sum of $80,720.50, which coupons were due and payable on the first day of January, 1932. Intervener, West Coast Life Insurance Company, on the first day of January, 1932, was the holder of due interest coupons against said district in the sum of $3,000. On the first day of January, 1932, there became due to the owners of registered bonds, as interest, the sum of $3,420, the coupons representing said sum having been detached from bonds issued by said district and turned over to the treasurer thereof. In addition to the coupons which we have mentioned, there was, on the first day of January,

1932, presented for payment, additional interest coupons, so that the aggregate value of interest coupons presented on that date was the sum of $315,605.50, in addition to the interest due on registered bonds. All of this sum became due on the first day of January, 1932. On the second day of January, 1932, the treasurer of the district received by registered mail additional interest coupons in the sum of $25,632, all of which coupons became due on the first day of January, 1932. The due dates of interest on the bonds involved in this action were fixed as of January 1st and July 1st of each year. The latest tabulation presented to this court shows that there has been presented to the respondent as treasurer of the Merced Irrigation District, for payment, interest coupons in the sum of $473,820, and that there is now on hand in the bond interest fund of said district the sum of about $260,000. On the first day of January, 1932, there was in the hands of the respondent, as treasurer of said district, available for paying interest coupons, the sum of $216,915.41.

At the time of the presentation of interest coupons to the respondent and demand made for the payment thereof, payment was refused on the ground that there was not sufficient money in the bond fund of said district to pay the outstanding interest coupons then due. Registration of unpaid interest coupons was likewise refused.

The record in this case shows the order of presentation of interest coupons, and without setting forth the amount of the interest coupons, and by whom presented, it is sufficient to state that at the date of the presentation by the First National Bank in Merced, of interest coupons in the sum of $97,882.50, which presentation included the coupons belonging to the petitioner herein, there was in the bond fund of said district sufficient money to pay all of the coupons that had been presented to the respondent for payment, and also to pay the whole of the interest coupons presented for payment by the First National Bank of Merced, including the interest coupons belonging to the petitioner herein. It likewise appears that at the time of the presentation by the interveners herein of the several interest coupons held by them respectively, there was not sufficient money in the bond fund of said district to pay any portion of the coupons so presented by the interveners, if payment

had been made to those persons who, prior thereto, had presented interest coupons of said district for payment. The record, however, before us now does show that upon the interest coupons presented by the intervener Banks, Huntley & Company, after paying all of the coupons presented prior to the presentation made by intervener, there is in the bond fund of said district approximately $15,000 which would be applicable to the payment on coupons presented by said intervener in the event that payment on bond interest coupons should be paid in the order of their presentation.

It is contended on the part of the petitioner that payment of interest coupons should be made by the treasurer of the district in the order of their presentation, so long as there are any moneys in the bond interest fund of the district available for such purpose, and that upon the expiration of the funds available for such purpose, the respondent, as treasurer of the district, should register the coupons so presented, in the order of their presentation, which interest coupons would bear interest thereafter at the rate of seven per cent, and the bondholders thereof would be entitled to payment in the order of the registration of such interest coupons.

On the part of one of the interveners herein it is contended that where there is not sufficient money in the bond interest fund of the district to pay all of the outstanding coupons, or coupons which become due upon a certain date, in this instance on the first day of January, 1932, then and in that event the treasurer should make payment *pro rata* upon the interest coupons presented, irrespective of the order of their presentation, and that each coupon-holder would be entitled to payment upon his coupon of a sum of money proportionate to the fund on hand, as his coupon bore to the total outstanding due interest coupons of the district.

Section 52 of the California Irrigation District Laws, as amended in 1931, so far as pertinent here, reads as follows: "Upon presentation of any matured bond of the district, the treasurer shall pay the same from the bond principal fund, and upon presentation of any matured interest coupon of any bond of the district, the treasurer shall pay the same from the bond interest fund. If money is not available in the fund designated for the payment of such ma-

tured bond or interest coupon, it shall draw interest at the rate of 7 per cent per annum from the date of its presentation for payment until notice is given that funds are available for its payment, and it shall be stamped, and provision made for its payment, as in the case of a warrant for the payment of which funds are not available on its presentation.'' The amendment in 1931 simply provided for two funds, and did not change the meaning or legal effect of the section.

Subsequent to the hearing of this cause a number of affidavits had been filed relative to the order of presentation of the coupons for payment, and also as to the sufficiency of the presentations. Without referring to the affidavits, or setting forth the matters contained therein, it is sufficient to say that the record amply establishes presentation of interest coupons in such amounts, preceding the presentation made by the interveners herein, as to give the petitioner and the interveners the status with reference to their presentation and demand for payment and registration of coupons, just as we have stated.

The portion of section 52 of the California Irrigation District Laws which we have quoted specifically provides that upon the presentation of any matured bond, or of any matured interest coupon, or any bond of the district, the treasurer shall pay the same from the bond interest fund. There is no provision in the section that payment shall be withheld until all of the matured bonds, or until all of the matured interest coupons have been presented. If there is any money in the fund available for payment, the section makes it the duty of the treasurer to pay the same. It is then provided that if there is no money in the bond interest fund available for paying matured bonds or matured coupons, they shall bear interest at the rate of seven per cent per annum thereafter until notice is given that funds are available for payment, and they shall be stamped, as in case of a warrant for payment where funds are not available on presentation.

We do not need to set forth the method of procedure relating to the payment of warrants, further than to state that stamped and unpaid interest coupons or bonds follow the same procedure, and the holders thereof are entitled to payment immediately upon funds coming into the hands of

the treasurer of the district, available for such purpose, and in the order in which they are registered.

The word "any" used in section 52 of the California Irrigation District Laws is sufficiently broad to comprehend the bonds or interest coupons of any issue so that there is no priority given under the statute to any of the bonds issued by the irrigation district.

In 3 C. J. 231 are quoted a number of decisions where the word "any" has been construed, from which we select the following: "While 'any' is derived from 'one', and indeed, has been used as synonymous with 'a' or 'an', or as referring to 'anybody', 'anyone', or any person or any one of a number, any one out of many, any other, or either, it does not necessarily mean only one person, but may have reference to more than one, or to many, and indeed, it has been frequently used in this enlarged and plural sense as meaning 'some', or an indefinite number or quantity; one or more, or all, as the case may be."

A reference to the cases quoted in 3 C. J., *supra,* shows that the word "any", as used in section 52, *supra,* would apply to any due bond or interest coupon that might be presented, and that any such bond or interest coupon is entitled to payment upon presentation, if there is money in the bond interest fund equal to the value of the bond or the value of the interest coupon so presented.

This interpretation of the section is strengthened by the fact that provision is made for the registration of bonds and interest coupons in the event that there is not sufficient money in the treasury of the district available for payment and the allowance of an additional rate of interest. While the bonds are issued and placed upon the market, bearing interest, in this case, in no instance exceeding five and one-half per cent, the section provides for payment of interest at the rate of seven per cent during the period of time when the holder of the bond or interest coupon is required to wait for payment after the same becomes due if he elects to have his bond or interest coupon registered. Again, the treasurer of the district has authority to perform two acts: He must either pay the bond or interest coupon when presented or register the same. The irrigation laws do not confer upon the treasurer of the district any authority to prorate payments. If the money is there and

the bond or interest coupon is due, his legal duty is to pay. If money is not there, his legal duty is to register the bond and interest coupon and make payment, with the added interest, as soon as sufficient money is available.

We do not need to enter into any discussion of what acts are necessary to constitute presentation of bonds or interest coupons, in order to charge the treasurer with the duty to pay, but will content ourselves with the statement that the record before us sufficiently establishes acts on the part of those presenting coupons to fill all such requirements.

Our attention has been called to only two California cases which may in any way bear upon the questions involved herein. In *Meyer* v. *Porter,* 65 Cal. 67 [2 Pac. 884], it was held that *mandamus* would issue to compel an officer to perform the legal duty incumbent upon him to pay interest coupons or bonds which had become due, even though other holders of like securities have not presented them for payment, or have not instituted any action to compel payment. So far as we have been able to ascertain, however, the authority under which the bonds and coupons in the case of *Meyer* v. *Porter, supra,* were involved, no provision was made such as we find contained in section 52 of the California Irrigation District Laws. The decision simply goes to the effect, therefore, that the plaintiff in the action was entitled to a writ commanding payment, irrespective of the existence of other bondholders who had not instituted any action.

Again, in the case of *Meyer* v. *Widber,* 126 Cal. 252 [58 Pac. 532], the court had before it a *mandamus* proceeding to compel payment of certain Dupont Street bonds and coupons. In this action it was held that the party instituting the *mandamus* proceedings was entitled to a decree directing payment, irrespective of the existence of other holders who had not demanded payment, or, if demand had been made, had taken no action.

Again, it appears that the act of the legislature under which the bonds involved in this case were issued contained no similar provisions relative to payment upon presentation, found in section 52, *supra.* The dissenting opinion written by Chief Justice Beatty, and concurred in by Justices Temple and Shaw, presents views and arguments which we think applicable here: That upon presentation and demand for

payment, the treasurer of the irrigation district, the respondent in this proceeding, was charged with the legal duty to make payment, and it was his duty to make payment in the order in which the coupons were presented and demand made for payment.

One of the interveners calls our attention to the case of *Thomas* v. *Patterson Co., Treasurer, etc. (Bancroft), Intervener,* 61 Colo. 547 [159 Pac. 34, 37], and the case of *Norris* v. *Montezuma Valley Irr. Dist.,* 248 Fed. 369, and also to the text found in McQuillin & Dillon on Municipal Corporations, relying upon these cases. However, we think the wording of section 52, *supra,* distinguishes the instant case and renders the holding of the Colorado Supreme Court, *supra,* and of the federal court, *supra,* inapplicable. In both of the cases referred to questions involving interest coupons on district irrigation bonds were presented to the court. Also, the question of priority of payment between different issues was presented. In the Patterson case the court propounded this question: "Has any coupon-holder the right to have the funds in the hands of the treasurer, applied in payment of his coupons, in preference to others of the same issue, due at the same time, when there is insufficient (money) to pay all, because the one holder may present his for payment before another, or, perchance, may be first in line, or be recognized first, arbitrarily, or otherwise, by the County Treasurer?" And then answer as follows: "The statute does not require that coupons shall be paid in the order of their presentation; but to the contrary, it in substance provides that funds realized from the collection of taxes levied to pay interest maturing on any issue of bonds in a specified year is for the benefit of all holders of interest coupons which may legally be paid out of such funds. . . . " After referring to the declaration in the pleadings, the court further said: "We think this declaration specially applicable to the facts here, as well as based upon sound reasoning, and that it would be a miscarriage of justice where two people, as in this case, like Thomas and Bancroft, both held coupons against the trust fund, pledged to the payment of all such coupons, and where both, if not others, were present at the opening of the office at the time they were due, to allow the one who might first be recognized by the County Treasurer, to receive any

priority over the others who were there also, or who thereafter presented their coupons within a reasonable time. In such cases the weight of authority is that there should be no distinction made between them, and that all have a reasonable time within which to present their coupons for payment without losing their rights." (Citing *Shelly* v. *St. Charles County Court C. C.*, 21 Fed. 699; *Southern Bank* v. *Louisiana Nat. Bank*, 32 La. 290; *Sibley* v. *Mobile*, 22 Fed. Cas. 57.) In the Patterson case there likewise appears a rather strong dissenting opinion.

In *Norris* v. *Montezuma Valley Irr. Dist., supra,* following the Patterson case, the court held (quoting from the syllabus): "Under Colorado Irrigation statutes the County Treasury was not required to pay coupons from funds of an Irrigation District, in the order of presentation, but the funds available, if insufficient to pay all coupons, were to be allotted to all holders of coupons who presented them within a reasonable time after they were due." This case also was decided by a divided court.

An examination of the Colorado Irrigation District Laws found in Session Laws of Colorado for 1905, beginning on page 246, discloses that the language of the section referring to payment of bonds and interest coupons, differs materially from that of section 52 of the California Irrigation District Laws. Section 17 of the Colorado Irrigation District Act reads as follows: "(Bonds—Payment—Lien) Said bonds and the interest thereon shall be paid by revenue derived from an annual assessment upon the real property of the district, and the real property of the district shall be and remain liable to be assessed for such payments as hereinafter provided." There is no provision in the Colorado act providing for the registration of either bonds or interest coupons. No provision is made for an increase in the interest thereon in the event that any holder of a bond or interest coupon is not paid upon the date of its maturity. There is no provision in any of the sections of the Colorado act directing the treasurer to make payment upon presentation of any bond or interest coupon if money is available, or to register the same if funds are not available for payment. These provisions we think distinguish the California act from the Colorado act, and specify an orderly procedure.

Again, we may repeat there is nothing in the California act which authorizes the treasurer to withhold payment and await a collection or presentation of all the interest coupons, and then pay *pro rata*. The legislature undoubtedly perceived the confusion that would follow such a procedure. Thus, in this case, it appears that between the first day of January, 1932, and the first day of July, 1932, there was both a possibility and a probability of there being presented for payment or registration, interest coupons in the sum of $477,000, or thereabouts, and that at the date of the hearing of this case there was in the bond interest fund of the district the sum of about $260,000, and that additional money is coming into the hands of the treasurer from time to time. Taking $477,000 as the basis, the treasurer would then be required to pay, upon presentation of a coupon, such proportion as the coupon presented bore to the total amount due, and as money thereafter came in, figure out and remit to each coupon-holder what we will call a dividend bearing a like sum or proportion as the money received bore to the whole value of the outstanding coupons. Likewise, the result would follow that if all the coupons were not presented, one might never get full payment even though the funds were in the treasury of the district sufficient to cover the amount of the coupons presented.

Again, to show that the decisions based upon the Colorado statute are inapplicable, one question only need be presented: When would the treasurer be legally bound to register unpaid coupons or unpaid portions of coupons? That this procedure would involve endless confusion seems to us self-evident, and led the legislature to make the provision it has made.

In answer to the statement that the treasurer of the district might act arbitrarily, it is sufficient to say that the officer whose duty it is to make payment would probably render himself liable upon his official bond, if anyone suffered damage by reason of any such actions.

While the word "any" is sometimes construed to mean "all", as contended for by interveners, yet it seems manifest to us that such interpretation cannot be given to the use of the word "any" as employed by the legislature in section 52, *supra*. If that were the intent of the legislature, the wording would have been: "When all the interest

coupons that are due have been presented, the treasurer shall make payment.'' It cannot be that the legislature intended to tie up the fund until the last interest coupon had been presented for payment. Furthermore, any such interpretation would eliminate entirely the wording in the section providing for the registration of unpaid coupons. We do not need to follow the argument of counsel as to whether the words relating to payment are directory or mandatory. Whether he is commanded to pay or directed to pay is not decisive of the questions here involved. However, the legislature used the word ''shall'' instead of the word ''may'', which indicates that the duty is imposed upon the treasurer to make payment if there are sufficient funds available for that purpose. Even though the word ''may'' had been used when the rights of third parties are involved, the word ''may'' as to what an officer shall do is held to be mandatory. (*County of Los Angeles* v. *State of California*, 64 Cal. App. 290 [222 Pac. 153]; *Stockton Plumbing & Supply Co.* v. *Wheeler*, 68 Cal. App. 592 [229 Pac. 1020].)

Again, it is not a question as to whether there are sufficient funds to pay all interest coupons that might be presented for payment, but if there are sufficient funds on hand to pay any interest coupon that is presented.

There is a clear distinction between the provisions made for the payment of bonds and interest coupons under the irrigation district laws of this state, and the marshaling of assets to make payment on the bonds of any insolvent concern, or where there is only one fund out of which payment of bonds can be made. Where there is only one fund, or where all the assets of an insolvent concern are to be marshaled and payment made to creditors, equity will undoubtedly prorate the payments so that all bondholders or creditors may share therein. In the case at bar there is a continuing obligation on the part of the district to make payment, and there are provisions in the irrigation district laws for the enforcement of that continuing obligation. While the interest-bearing coupons all become due on a fixed date, the legislature realized that while taxes all become due and payable on a certain date, that payment is made by owners of property in the district from time to time, and that several months may elapse between the first and final payments, and that while there might be money

in the hands of the treasurer of the district to make payment of a considerable number of the coupons on the due date thereof, a considerable time might elapse before full payment could be made. Realizing this, and also in view of the fact that the legal value of the use of money, and, likewise, the legal value of the deprivation of the use of money in this state is fixed at the rate of seven per cent per annum, the legislature has provided that in the event any interest coupon-holder does not receive payment upon the date of the presentation of his interest coupon for payment, he may have the coupon registered so that it will draw the legal rate of interest and be fully compensated for the time during which he is deprived of the principal amount of the coupon. Thus, absolute equity is meted out between the coupon-holder who receives instant payment and the coupon-holder whose payment is deferred. Again, the priority seemingly enjoyed by the coupon-holder who receives instant payment is reversed in favor of the holder who has his interest coupon registered. For example, if "A" presents a coupon and receives payment, and "B" presents his coupon and has it registered, "B" will receive payment on his registered coupon and interest thereon in full before "A" can receive any more payments upon subsequently maturing coupons.

In addition to this the irrigation district laws provide that if the proper officers do not levy sufficient taxes to pay the maturing coupons, they can be compelled to do so by any interested party. All parties having agreed that under the. act of the legislature approved April 14, 1913 (Stats. 1913, p. 23), registered bondholders are entitled to payment in the order of their registration, it is unnecessary for us to lengthen this opinion by consideration of the rights of registered bondholders.

As if to offset or counteract the interpretation given to the Colorado Irrigation District Laws, the legislature of this state has in fact given its own interpretation as to how and when bonds and interest coupons are to be paid, and the acts to be performed in the event that payment is deferred from time to time. Section 52 of the Irrigation District Laws of California, in relation to the payment of interest coupons, contained only the following sentence: "Upon the presentation of the coupons due, to the treasurer, he shall

pay the same from the bond fund." (Stats. 1897, p. 272.) The remainder of the section deals with the redemption of bonds, advertising, etc., and is not pertinent here. Realizing the incongruity and confusion that would result from the failure to fully provide for the acts and things to be done relative to the payment of bonds and interest coupons, and to provide an equitable method by which every bondholder would be fully compensated, whether by prompt payment or deferred payment, the legislature amended section 52 of the California Irrigation District Laws, and after specifying that the treasurer must pay the interest coupon upon presentation, added the following sentence: "If funds are not available for the payment of any such matured bond or interest coupon, it shall draw interest at the rate of 7 per cent per annum from the date of its presentation for payment until notice is given that funds are available for its payment, and it shall be stamped and provision made for its payment, as in the case of a warrant for the payment of which funds are not available on its presentation." (Stats. 1919, p. 667.) Thus, whatever views of the section may be entertained by court or counsel as to what would be equitable, the legislature, in express terms, has provided an equitable procedure by providing that the person who holds a bond or coupon upon which payment is deferred shall receive the full legal value of the use of the money, and has in this manner given its own interpretation of section 52, *supra,* so far as involved in this case.

In view of the legislature's own interpretation as thus clearly set forth by its amending section 52, *supra,* there remains only one duty to be performed by the court, and that is to accept the interpretation as not only equitable but final.

The parties hereto, in open court, stipulated that if the court determined that payment should be made as contended for by the petitioners, then and in that case the respondent should be directed to make payment to the interest coupon-holders, following the order of their presentation, and not to direct payment simply to be made upon the coupons held by the petitioner and the interveners who have appeared in this action.

The order of the court, therefore, is that a writ of mandate issue in this cause, directed to the respondent, to forth-

with proceed to make payment in full of any and all interest coupons, in the order in which they were presented for payment, until the entire fund in his hands, available for that purpose, is exhausted, and then to forthwith proceed to register any and all interest coupons on which payment is not made, if so demanded by the holders thereof.

Thompson (R. L.), J., and Preston, J., concurred.