**GENERAL ELECTRIC SUPPLY CO v YOUNGMAN ELECTRIC CO et**

Ohio Appeals, 4th Dist, Scioto Co

Decided April 26, 1933

S. Anselm Skelton, Portsmouth, for cross-petitioner.

Bannon & Bannon, Portsmouth, Howard P. York, Portsmouth, and Miller, Searl & Fitch, Portsmouth, for defendants.

## OPINION

By MAUCK, J.

Assuming that the acquisition of this stock by the corporation was not under such circumstances as entitled the corporation to acquire the stock, it immediately follows that the corporation never became the owner of the stock. It cannot be said, however, that any further conclusion must necessarily be drawn. Eliminating the element of the stock transfer, we have this situation: Stevens offered personally to pay $7,070.80 of the unsecured debts of the corporation, and also pay the mortgage in question on the corporation's real estate, in consideration of the corporation conveying to him that real estate and turning over to him certain accounts receivable of the face value of $7,203.56, but of uncertain worth in fact. This was a sound contract based on legal considerations on both sides, and cannot be avoided unless the additional consideration that Stevens should transfer to the corporation his shares in the corporation was of such illegal character as to vitiate the whole contract.

The rule generally, as laid down in 6 Ruling Case Law, 682, is that where the consideration is made up of several distinct parts, some of which are legal, the contract will be upheld notwithstanding the presence of an illegal consideration, unless the transaction as a whole is opposed to good morals, or unless a penalty is imposed by law upon the transaction. As we have pointed out, this contract has sufficient legal considerations without the sale of the stock. It is not immoral in any way, nor are the parties subject to any penalty for consummating the contract.

Unless the law of Ohio is to be distinguished from the general rule referred to the contract must be upheld. It is impossible to reconcile all that has been said in all the Ohio opinions, and we shall not undertake a discussion of them. It is important to observe that the enforcement of this contract will not accomplish the violation of any law either on the part of the promissor or any one else.

In **Commissioners of Knox County v Nichols, 14 Oh St, 260,** and **State ex Laskey v Board of Education of Perrysburg Twp., 35 Oh St, 519,** it was held that a contract containing a provision that violated a statute would nevertheless be upheld to the extent that it was legal where the legal promise was readily separable from the illegal. **Widoe v Webb, 20 Oh St, 431, at page 435,** 5 Am. Rep., 664, is sometimes referred to

as establishing the contrary doctrine, but in that case the court says:

"When, however, for a legal consideration, a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful, and void for the residue."

Applying this principle to the case at bar, Stevens received two legal considerations, to-wit, the bills receivable of the corporation and the conveyance of the real estate. In return he bound himself to assume the mortgage in question, and to pay the bills payable, both perfectly valid engagements. That he also undertook to transfer stock as a further consideration, and that this undertaking was unlawful, and consequently failed, did not release him from the performance of his legal obligations. This doctrine is unaffected by **McQuade v Rosecrans, 36 Oh St, 442**, and **Kahn, Jr., v Walton, 46 Oh St, 195, 20 NE, 203**, and that line of cases that denies relief in equity to a suitor who comes with unclean hands, or to a claimant at law who is in pari delicto, because in the case at bar the cross-petitioner is not charged with any misconduct of any kind.

While it seems that these Ohio authorities are in line with the general rule laid down in Ruling Case Law, and that there is no technical difficulty in enforcing the agreement made by those who assumed the mortgage, the Supreme Court has indicated that the sanctity of contracts might require us to go farther, if necessary, to sustain the agreement sued upon. Illegal contracts are refused enforcement only as a matter of public policy, and not as a right of the party thereto. The contract for the sale of this real estate was not illegal, but, though it had been, public policy might be better served by requiring the parties thereto, who were alone derelict, to go on with the performance rather than strip innocent parties, not in any way involved in any illegality, of the rights flowing to them by the transaction. Judge Spear, in **King v King, Exr., 63 Oh St, 363, 372, 59 NE, 111, 52 L.R.A., 157, 81 Am. St. Rep., 635**, says that even though the acts of the parties have been in violation of positive law their contract is sometimes enforced, and he quotes with approval:

" 'Public policy, it must be borne in mind, lies at the basis of the law in regard to illegal contracts, and the rule is adopted not for the benefit of parties but of the public. It is evident, therefore, that cases may arise, even under contracts of this character, in which the public interests will be better promoted by granting than by denying relief, and in such the general rule must yield to this policy'."

No reason has been shown why Stevens and Youngman should be released from their obligation, and a decree for the building and loan company may be entered as prayed for.

Decree for cross-petitioner.

BLOSSER, PJ and MIDDLETON, J, concur.