J. W. HAGLER, Appellant, v. CITY OF SALEM, GEORGE H. SLAWSON, Mayor, T. F. KEY, JOSEPH NORTON, ARCH REDWINE, E. E. MARTIN, Members of the Board of Aldermen, GEO. REDWINE, Treasurer; FAIRBANKS, MORSE & COMPANY, a Corporation of the State of Illinois.—62 S. W. (2d) 751.

Division One, August 3, 1933.

*Wm. P. Elmer* for appellant.

*E. W. Bennett, Jones, Hocker, Sullivan & Gladney* and *Willard A. McCaleb* for respondents.

332

FERGUSON, C.—The plaintiff, as a citizen and taxpayer of the city of Salem, brought this suit seeking to have declared invalid, and to enjoin the performance of, a contract entered into between said city and Fairbanks, Morse and Company, a corporation, whereby the city of Salem undertook to purchase from that company two engines and other equipment and machinery for use in a municipal electric plant.

Salem is a city of the fourth class. On April 2, 1929, at a special election, duly called and held, a proposition was submitted to, and adopted and approved by, the voters of Salem "to increase the indebtedness of said city in the sum of twenty-five thousand ($25,000) dollars for the purpose of erecting and constructing an electric light plant and to authorize the Board of Aldermen to borrow the said sum for this purpose and issue bonds therefor." The bonds were duly issued and sold. Including these bonds the bonded indebtedness of the city then aggregated $125,000. The assessed valuation of taxable property within the city for the year 1928 was $1,290,936, and for the year 1927, $1,275,365. Thus the bonded indebtedness closely approached the maximum amount permitted. [Constitution of Missouri, Art. 10, Secs. 12 and 78A.] The entire proceeds of the twenty-five thousand dollar bond issue were used in the purchase of a site and the erection thereon of a building to house the electrical machinery and appliances and the construction of a distribution system. By authority of an ordinance duly enacted by the board of aldermen a contract of date of June 1, 1929, was made and entered into between the city and Fairbanks, Morse and Company whereby the city purchased from that company two complete engine and alternator units and auxiliary equipment for use in such electrical plant to be delivered and installed within the time and in the manner specified in the contract. The contract provides for certain tests and makes certain guarantees as to performance, material and workmanship. The contract then fixes the purchase price of the machinery at $60,-944.40, which the city agrees to pay in the following manner:

"In seventy-two equal monthly payments of $846.45, with interest.

the first payment being due 60 days from date of complete installation of said machinery and equipment.

"All deferred payments are to be evidenced by pledge orders of the Municipality payable to the order of the Company, dated and delivered as of the date of completion of installation, and shall bear interest from said date at the rate of six per cent per annum.

"It is agreed that the obligation to pay the deferred installments of said purchase price and said pledge orders issued in evidence thereof is no general obligation of the said Municipality payable from taxes or its general funds but only special obligation payable from the net revenues of the electric light and power plant of the Municipality. 'Net revenues,' shall be deemed to represent the balance of the gross receipts of the Municipality's electric light and power plant after the payment solely of the legitimate and necessary expenses of the operation of said plant. The Municipality covenants to operate said plant in an efficient and economic manner, and to maintain rates for the product or service of said plant which will produce sufficient revenue to provide for the payments called for by this contract so far as it may be permitted to do so by law.

"The Municipality agrees to adopt resolutions providing for the creation of a special fund into which all receipts for the product or service of said plant shall be deposited and to credit such fund at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purposes."

The contract contains the following proviso as to title and ownership of the machinery:

"That the title and ownership of the machinery or materials herein specified shall remain in the Company until final payment therefor has been made in full as above provided, and in the event that pledge orders are taken at any time representing deferred payments or any sum that may be due, or in the event that any judgment is taken on account of all or any part of the said sums, the title to the machinery or materials shall not pass until such pledge orders so given, or extensions thereof, or such judgment taken, are fully paid in money and satisfied. The Company shall have the right to discount or transfer any of said pledge orders, and the title or right of possession in and to said machinery or materials shall pass thereby to the legal holder of such pledge orders.

"The said machinery or materials shall be and remain strictly personal property and retain its character as such, no matter whether on permanent foundation or in what manner affixed or attached to any building or structure, or what may be the consequences of its being disturbed on such foundation, building or structure, or for what purpose the machinery or materials may be used."

A requirement for insurance against loss or damage by fire is

made which together with other provisions, not deemed pertinent, we omit. Pursuant to this contract the machinery was delivered and installed and the city issued and delivered the pledge orders, provided for by the contract, payable, to the order of Fairbanks, Morse and Company, monthly, in the amounts specified in the contract. These pledge orders were drawn upon and made payable "solely from" the special fund which the contract required the city to create and maintain.

The original petition herein was filed in the Circuit Court of Dent County in July, 1929. The case went on change of venue to the Circuit Court of Howell County and there an amended petition, upon which the case was tried, was filed June 11, 1930. The city of Salem, the mayor, city treasurer, the board of aldermen and Fairbanks, Morse and Company, a corporation, were made defendants. The amended petition sets out the matters we have related in reference to the bond issue in the amount of $25,000 for the erection and construction of an "electric light plant" and the contract entered into with Fairbanks, Morse and Company, alleged, the assessed valuation of all taxable property of the city for the years 1929, 1928, 1927 and 1926; that at and prior to the time such contract was made and entered into the indebtedness of the city of Salem aggregated $125,000; "that such indebtedness prevented the city from incurring any additional indebtedness under the provisions of Sections 12 and 12A, Article 10, of the Constitution of Missouri, and that the indebtedness for said engines exceeded the constitutional limitation aforesaid." It was further alleged that the contract was void and violated said Sections 12 and 12A of Article 10 of our Constitution, in that there is "a community of ownership of the property between the city of Salem and Fairbanks, Morse and Company, and the city of Salem is not the exclusive owner of said electric light and power plant as required by said sections." The answers of the Fairbanks, Morse and Company and the city of Salem and the officers of said city who are made defendants admit the purchase and sale of the machinery, plead the contract and validity thereof, the issuance and delivery of the pledge orders and facts concerning the installation of the machinery and the subsequent operation of the electrical plant by the city. The trial court entered its judgment finding the issues "for the defendants and that plaintiff is not entitled to the relief sought," from which judgment plaintiff appealed.

Appellant's brief here states:

"It was conceded throughout the trial that if the pledge orders are an indebtedness against the City of Salem, within the meaning of Sections 12 and 12A, Article X, of the Missouri Constitution, then the plaintiff was entitled to the relief prayed for; otherwise not. This question, together with the question as to whether the contract provides for the joint or community ownership, and not a sole own-

ership by the City of Salem, are the only points presented for this Court's decision."

Respondents, at the beginning of their printed argument, seem to acquiesce in the foregoing statement. Therefore the questions which we are called upon to consider and rule are thus defined and limited. However with the view we have of this case a determination of the first question presented, is dispositive of the case, i. e., does the indebtedness for the purchase price of the machinery, $60,900, evidenced by the pledge orders, constitute an indebtedness against the city of Salem within the meaning of Sections 12 and 12A, Article 10, of our Constitution?

At the time this case was heard and decided by the trial court the opinion of this court, en banc, in Hight v. City of Harrisonville, 328 Mo. 549, 41 S. W. (2d) 155, had not been handed down. The facts of this case are so like and similar to the facts in the Harrisonville case that the holding of our court, en banc, in that case rules the present case. The city of Harrisonville, a city of the fourth class owned a distribution system, a street lighting system and a building for housing the electrical machinery. Engines and other machinery, of apparently the same type and character as that purchased by the city of Salem, were needed to complete the installation of an electric plant. The city of Harrisonville "had reached the constitutional limit of indebtedness." The city, however, proceeded to purchase the engines and machinery from Fairbanks, Morse and Company, under a contract which in form, terms and provisions is substantially like the contract involved in the present case. The agreed purchase price of the engines and machinery was $71,624.40. The contract specified that the purchase price should be paid in sixty monthly payments, each in the amount of $1193.82, and then provided:

"All deferred payments are to be evidenced by pledged orders of the Municipality payable to the order of the Company, dated and delivered as of the date of completion of installation. . . .

"All obligations arising under the terms of this contract are not general obligations of the City of Harrisonville, Missouri, but only special obligations payable from the net revenues of the electric light plant of the City of Harrisonville, Missouri, 'Net revenues' shall be deemed to represent the balance of the gross receipts of the Municipality's electric light plant after the payment solely of the legitimate and necessary expenses of the operation of said plant. The Municipality covenants to operate said plant in an efficient and economic manner. . . .

"The Municipality agrees to adopt resolutions providing for the creation of a special fund into which all receipts for the product or service of said plant shall be deposited and to credit such fund at the regular established rates for all product or service of said plant

used by the city or any department thereof for any and all *public* purposes.''

The plaintiffs, citizens and taxpayers of Harrisonville, contended, as is contended here, that the debt created by the contract ''was within the purview of Section 12, Article 10 of the Constitution'' and the contract therefore void. The opinion quotes the pertinent parts of said Section 12, Article 10, as follows:

''No . . . city . . . shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the consent of two-thirds of the voters thereof voting on such proposition, at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for State and county purposes, previous to the incurring of such indebtedness; . . . and provided further, That any . . . city . . . incurring any indebtedness requiring the assent of the voters as aforesaid, shall before or at the time of doing so,. provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting same.''

The word ''indebted'' as used in the foregoing section of the Constitution, is then defined as follows:

''We held in the Fayette and Neosho cases (Bell et al. v. Fayette, 325 Mo. 75, 28 S. W. (2d) 356, and State ex rel. Smith v. Neosho, 203 Mo. 40, 101 S. W. 99) that the word 'indebted' in said section means a debt payable from funds raised or to be raised by taxation. We are satisfied with the ruling on that question in those cases.''

The opinion then makes this pronouncement:

''However, having reached the constitutional limit of indebtedness, a city cannot create a debt to be paid directly or indirectly, in whole or in part, from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation.''

Going to a discussion of the validity of the Harrisonville-Fairbanks, Morse contract the court said:

''We next consider the contract to determine the question of its validity. It is therein provided as follows:

'' 'All obligations arising under the terms of this contract are not general obligations of the City of Harrisonville, Missouri, but only special obligations payable from the net revenues of the electric light plant of the City of Harrisonville, Missouri. . . .

'' 'The Municipality agrees to adopt resolutions providing for the creation of a special fund into which all receipts for the product or

service of said plant shall be deposited and to credit such fund at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purposes.'

"It will be noted that while the first paragraph provides that the obligations are not general but special and payable from the net revenues of the light plant, still, the second paragraph provides that the city shall 'credit such funds at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purposes.' In other words, provision is made for the city to purchase from itself, at a profit, power for its water plant, lights for its streets, and current for other purposes. The record shows the city has no funds available for such purposes. If it purchases its own current, funds for that purpose must come from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation. In this situation, the parties resorted to the subterfuge of fixing the rate the city must pay itself for current without in express terms requiring the city to use its own current. Defendants do not contend that the city will not use its own current to light its streets and for power to operate its water plant. It would be idle for them to do so. The city would not purchase current from others when it had current of its own for sale. Indeed, defendants concede that the electric plant of the city will furnish power for its water plant, and the evidence shows that the city contemplates using its own current to light its streets. Furthermore, the parties to the contract, in fixing $1,193.82 as the amount to be paid by the city monthly for sixty months, must have taken into consideration the money the city would pay into the special fund (so-called) for power and light. It is evident from a consideration of the contract as a whole that it was the intention of both parties to require the city to pay into the special fund and thereby pay on the purchase price of the engines and equipment a sum of money equal to the cost of current used by the city at the 'regular established rate.' It is also evident that the parties knew this payment by the city must be from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation. Therefore, they resorted to this subterfuge in an effort to evade the constitutional prohibition. . . . 'Whenever courts see such attempts at concealment "they brush away the cobweb varnish," and show the transaction in its true light. They see things as ordinary men do, and see through them. Whatever might be the form or color of the transaction, the law looks to the substance of it.' . . .

"The bar to the constitutional prohibition is clear, and we should not permit it to be evaded. The contract must be held invalid."

Though at one point in their brief respondents, referring to

the Harrisonville case, make this concession: "that case involves precisely the same facts as this one" yet in another and latter portion of their printed argument they undertake to distinguish the two cases and to point out wherein the reasoning of the opinion in the Harrisonville case is not applicable in the instant case. Respondents state: "The first point of demarcation between that case (the Harrisonville case) and this, is in the fact that, as specifically found by the Supreme Court in the Harrisonville case the parties to the contract involved in that case intended, and indeed agreed, *dehors* the written contract, that the city should take current from itself and pay for it in the manner prescribed. In this case, on the contrary, the city may never take anything from itself until the obligation to Fairbanks, Morse and Company shall have been entirely discharged from the earnings of the municipal plant in the service of the inhabitants of the municipality." It sufficiently appears from the evidence in the present case and the answers of defendants that the city of Salem owned and maintained an electric street lighting system and that it used electrical power in the operation of its municipal water system. Though it be repetition we again quote a comment made in the Harrisonville case which seems peculiarly in point here: "Defendants do not contend that the city will not use its own current to light its streets and for power to operate its water plant. It would be idle for them to do so. The city would not purchase current from others when it had current of its own for sale." The answers of defendants herein admit that the Salem municipal electrical plant was constructed and "is being operated and is serving with electric current the street lighting system of the city of Salem" and "furnishing power for the water system." As in the Harrisonville case, the contract does not in express terms require the city to use its own current yet it contains a provision "fixing the rate the city must pay itself for current" which in the light of the facts in the Harrisonville case, and the same situation exists in the present case, the court there pronounced a subterfuge. It is evident from the contract as a whole and the situation shown that the parties to the contract contemplated and intended that the city of Salem would purchase from itself, at a profit, electrical current and power to light its streets, operate its water plant and for other municipal purposes. Respondents next say that in the Harrisonville case the court "found as a fact that the payments to be made by that municipality for services to be rendered by itself to itself must be raised by taxation" and quote the language of the opinion in that case: "It is also evident that the parties knew this payment by the city must be from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation." Then respondents assert: "There is nothing to make the same fact 'evident' in the case at bar." The evidence shows the various city funds and tax levies for various purposes. It

does not appear nor is it claimed that any other funds had been or would be provided from some other or private source or by some means other than taxation to pay the city, and into this so-called special fund, at the regular established rates, for light and power purchased from itself for municipal purposes. We think it just as evident in this case as it was in the Harrisonville case that in requiring the city of Salem to pay such charges into the so-called special fund the parties knew this payment, or at least a substantial part of it, "must be made from funds raised by taxation or from a fund which must be replenished by funds raised by taxation."

But respondents say if the Harrisonville case be held applicable, and we do so consider it, nevertheless the contract as a whole should not be declared invalid but merely that part of it requiring the city to pay into and credit the fund designated therein a special fund, "at the regular established rates for all product or service of said plant used by the city or any department thereof for any or all public purposes," the argument being that such provision is "so entirely separate in thought from the other terms of the contract that" its invalidity does not make the contract as a whole invalid. The determination of the separability of this provision of the contract is governed primarily by the intention of the parties which is to be arrived at from a consideration of the whole contract, the language used and the subject-matter of the agreement (13 C. J. 562) and if it appears upon such examination that the contract would not have been made independently of the invalid part the contract as a whole must be held invalid. Again using language of the Harrisonville case and applying it to the facts here, "the parties to the contract, in fixing" $846.45 "as the amount to be paid by the city" of Salem "monthly for" seventy-two months "must have taken into consideration the money the city would pay into the special fund (so-called) for power and light. It is evident from a consideration of the contract as a whole that it was the intention of both parties to require the city to pay into the special fund and thereby pay on the purchase price of the engines and equipment a sum of money equal to the cost of current used by the city, at the 'regular established rate.' " In the light of the situation existing at the time the contract was made and the manifest intention and purpose of the parties, as evidenced by the terms and provisions of the contract itself, we cannot say, as was said in State ex inf. Chaney v. West Mo. Power Co., 313 Mo. 283, 281 S. W. 709, cited by respondents, that such provision "is merely incidental to the main purpose" of the contract or that it appears that the contract would have been entered into independently of such provision. Rather the provision appears to constitute a material and integral part of the consideration for the agreement and indicates that at the time the contract was made the city would not have obligated itself to pay the monthly installments,

in the amount specified, and in default, at any time, of all or any part of which the company could repossess the property retaining a portion of the payments which had been made (Sec. 3126, R. S. 1929) or foreclose its equitable lien (Wayne Tank and Pump Co. v. Quick Service Laundry Co. (Mo. App.), 285 S. W. 750), had it not relied upon the income expected to be derived from the sale at regular rates of current and power to itself to be paid for out of the funds raised by taxation for municipal purposes. Both parties evidently looked to the source of income so provided for to enhance and secure the fund out of which the monthly payments were to be met.

The Harrisonville case announces the controlling law of this case and in following that case we must hold the contract invalid. The judgment of the circuit court is therefore reversed, the cause remanded and that court directed to enter a decree in conformity with this ruling. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.