65 P.(2d) 857

## CITY OF SANTA FÉ v. FIRST NAT. BANK IN RATON.

### No. 4204.

Supreme Court of New Mexico.

Feb. 17, 1937.

C. R. McIntosh, of Santa Fé, for plaintiff in error.

Crampton & Robertson, of Raton, for defendant in error.

HUDSPETH, Chief Justice.

In this case it appears that the First National Bank of Raton sued the City of Santa Fé, a municipal corporation, and recovered judgment on nine sewer certificates of a large issue uttered by the defendant, City of Santa Fé, for the purpose of paying the cost of constructing sewer improvements in said city, under authority of Comp.St. 1929, §§ 90-2301 to 90-2308. The complaint states that by the terms of said certificates they were to be payable from money received from special assessments levied to pay for said sewer improvements, and that in addition thereto the defendant city further promised and agreed that any deficiency in said fund to pay said certificates or the interest thereon should be paid from the general revenues of the defendant. It was then alleged that the fund from the special assessment levied to pay said sewer improvements was an insufficient amount to pay the said sewer certificates and that there was and is a complete deficiency in said fund.

The defendant answered admitting all of the allegations of the complaint except that contained in paragraph 8, and the answer to that paragraph reads as follows: "That defendant admits the allegations in paragraph VIII of each count, except that defendant denies that there was or is any deficiency in said fund for the sole reason that assessments, sufficient in amount to pay said certificates, were duly and regularly made by the City Council against property sufficient in valuation to discharge the same, and that liens therefor were duly filed and

recorded in the office of the County Clerk of Santa 'Fé County, and that, when said assessments are collected, there will be a sufficient amount in said fund to pay said certificate."

The answer also raised a constitutional question by alleging that the debt sued upon was not contracted by an ordinance irrepealable until the indebtedness was paid, and which specified the purpose for which the funds to be raised were to be used, and which provided for a levy of a tax to pay the interest and principal thereon as required by section 12 of article 9 of the State Constitution, and further that the question of incurring such debt was not submitted at an election to a vote of the qualified electors of the city, nor had a majority of the qualified electors ever voted creating such debt as required by said section of the Constitution.

For a third and further defense it was alleged that the indebtedness was not paid and it could not be paid out of current revenues and money actually collected during the fiscal years in which said bonds were issued or during the years in which they were matured.

The plaintiff demurred to this answer upon the ground that the law under which the sewer certificates in question were issued does not require the passage of an irrepealable taxing ordinance and does not require the submission of the question of incurring such indebtedness to the electors, and further by reason of section 12 of article 9 of the New Mexico Constitution are not applicable to the character of obligation sued on in this action, and further as to the third separate defense that it was immaterial whether the indebtedness would be paid out of moneys collected during the current year. The demurrer was sustained, and the defendant having elected to stand on its answer, judgment was entered on the pleadings in favor of the plaintiff for the principal amount of the sewer certificates together with accrued interest to the date of judgment. Thereafter the City of Santa Fé sued out a writ of error in this court to review the judgment.

We are urged to pass upon the rights of the certificate holders as well as the constitutionality of the act since these questions are involved in much pending litigation.

Plaintiff in error will be referred to herein as the City and defendant in error as the Bank.

The main point argued is that the indebtedness sued upon is invalid because it was not incurred in accordance with section 12 of article 9 of the State Constitution, which provides as follows:

"Debt Contracting Power of Municipalities—Election—Limitation.

"Sec. 12. No city, town or village shall contract any debt except by an ordinance, which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged, and which shall specify the purposes to which the funds to be raised shall be applied, and which shall provide for the levy of a tax, not exceeding

twelve mills on the dollar upon all taxable property within such city, town or village, sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty years. The proceeds of such tax shall be applied only to the payment of such interest and principal. No such debt shall be created unless the question of incurring the same shall, at a regular election for councilmen, aldermen or other officers of such city, town or village, have been submitted to a vote of such qualified electors thereof as have paid a property tax therein during the preceding year, and a majority of those voting on the question, by ballot deposited in a separate ballot box, shall have voted in favor of creating such debt."

The certificates sued upon are all on the same form, the material parts of which are as follows:

"The City of Santa Fé, * * * for value received, hereby promises to pay to the bearer hereof the sum of Five Hundred Dollars, * * *

"This certificate shall be payable from money received from special assessments levied to pay for sewer improvements, but any deficiency in the fund to pay this certificate or the interest thereon shall be paid from the general revenues of said municipality.

"This certificate is issued for the purpose of paying the cost of constructing sewer improvements in the said City under and by virtue of Sections 3705 to 3712 inclusive, of the New Mexico Statutes, Codification of 1915, and all other laws of the State of New Mexico thereunto enabling, and it is hereby certified and recited that all requirements of law have been fully complied with by the officers of said City in the issuance of said certificates, and that all proceedings and things with reference to making said improvements, to the fixing of the assessment lien against the property improved, and the issuance of this certificate, have been lawfully taken and performed, and the said City has agreed to collect and enforce the payment of said special assessments, and in the event it becomes necessary to foreclose the lien of such certificates to do so at the expense of said City.

"For the collection and enforcement of said assessments and the foreclosure of the lien thereof the City of Santa Fé hereby pledges the exercise of all lawful corporate powers."

The Bank points out that this case falls within what it terms the contingent liability doctrine and maintains that the statute under which the certificates were issued is constitutional, notwithstanding it does not provide for an election, and that the word "debt" as used in section 12, article 9 of the Constitution, does not embrace the kind of obligation sued on in this action. The Bank cites American Company v. City of Lakeport, 220 Cal. 548, 32 P.(2d) 622; 17 C.J. (debt) 1377, § 2; Corey v. City of Ft. Dodge, 133 Iowa, 666, 111 N.W. 6; Lillard v. Melton, 103 S.C. 10, 87 S.E. 421; Brownlee v. Brock, 107 S.C. 230, 92 S.E. 477; McIntyre v. Rogers, 123 S.C. 334, 116 S.E.

277; Comfort v. City of Tacoma, 142 Wash. 249, 252 P. 929; Kelly v. City of Sunnyside, 168 Wash. 95, 11 P.(2d) 230; Wicks v. Salt Lake City, 60 Utah, 265, 208 P. 538; and the dissenting opinion in City of Aurora v. Krauss (Colo.) 59 P.(2d) 79, and other cases.

Several of the cases cited by the Bank involve the validity of statutes creating general guaranty funds to meet deficiencies in special funds authorized for the purpose of discharging city improvement bonds. California has such a statute, and the cited case of American Company v. City of Lakeport, supra, discusses sections of that statute.

In the late case of Kerr Glass Mfg. Corp. v. City of San Buenaventura, 62 P.(2d) 583, 585, the Supreme Court of California comments upon the statute and the Lakeport Case, as follows:

"The respondents aver that the sole reason for the inadequacy of the bond redemption fund is the failure of the landowners in said special assessment district to pay the installments of the assessment levied to discharge the cost of such improvement; that approximately 85 per cent. of the lands in the district are delinquent; that the value of the lands so delinquent is less than the total amount of delinquencies, penalties, and charges accrued against them; that there have been no sales or redemptions of such lands, and there are not likely to be any in the near future; and that the bond redemption fund is therefore insolvent. In its answer the respondent city admits its willingness and offer to pay the petitioner on a pro rata basis, computed on the ratio which the amount due to the petitioner bears to the total amount still unpaid on all outstanding bonds of series E, including also those which have not yet matured.

"The principal question for determination is whether the petitioner is entitled to payment in full from the bond redemption fund, there being sufficient funds for payment to it in full, although not sufficient to pay in full all of the matured claims against said fund; or whether it must accept payment on some pro rata basis to be determined.

"Preliminarily it must be said that the petitioner is not entitled to a direction for a levy of taxes sufficient to pay the delinquencies against the lands purchased by the city at delinquent tax sales which occurred subsequent to the initial delinquencies which compelled the sale. It has so been decided in the case of American Co. v. City of Lakeport, 220 Cal. 548, 563, 32 P.(2d) 622, et seq. That case settled the interpretation of sections 12 and 16(a) of the Improvement Bond Act of 1915 (St.1923, p. 304, § 12; St.1921, p. 230, § 16(a), to the effect that, if there are no surplus moneys available in the general fund, the city is not obligated to levy a tax for the purpose of procuring advances to the bond redemption fund wherewith to meet the amounts of assessment installments falling due on the lands after the sale thereof to the city. The interpretation of those sections of the act by recent decisions limits the mandatory tax levy by the city to the 10-cent levy provided by section 16(a).

American Co. v. City of Lakeport, supra; Union Safe Deposit Bank v. City of Menlo Park, 3 Cal.(2d) 264, 43 P.(2d) 811, and Id. (Cal.Sup.) 45 P.(2d) 347; Southern California Roads Co. v. County of San Luis Obispo, 4 Cal.(2d) 220, 48 P.(2d) 34; Griffith Co. v. County of Los Angeles, 4 Cal.(2d) 222, 48 P.(2d) 35; Sawyer v. County of San Luis Obispo, 4 Cal.(2d) 776, 48 P.(2d) 35; Thompson v. City of Compton (Cal.Sup.) 59 P.(2d) 505; Thompson v. City of La Mesa, 9 Cal.App.(2d) 542, 50 P.(2d) 504.

"More recently in the case of Hammond v. City of Burbank (Cal.Sup.) 59 P.(2d) 495, it was determined that not only was the 10-cent levy the only mandatory levy provided by the Improvement Bond Act of 1915, but that the purpose of the levy as provided by the act is limited and exclusive; that is, that the tax realized from the 10-cent levy may be used only to provide advances to pay the purchase price (the amount of the initial delinquent improvement assessment installment, penalties, and costs) of the lands sold to the city on delinquent tax sales.

"A further review of the cited cases or of the pertinent sections of the Improvement Bond Act involved therein is unnecessary for the purpose of making the observation that the immediate and important result of such recent decisions, viz., that the land in the district is the sole source of payment for the cost of the improvement and that the obligation of the municipality is limited merely to creating a revolving fund by certain authorized advances to the bond redemption fund, has a direct bearing upon the solution of the principal problem presented here.

"Advances to the fund by the city are authorized to be made from two possible sources, one the mandatory levy not exceeding 10 cents on each $100 of taxable property in the city, further limited by the amount required to meet the purchase price of lands sold or to be sold to the city at delinquent tax sales; and, second, the transfer of moneys from the general fund when there are surplus moneys available, as advances on the amount of improvement assessment installments falling due on lands sold to the city subsequent to the delinquent tax sales. That fact, together with the further holding in the case of Hammond v. City of Burbank, supra, that the duty of the city to levy and collect the 10-cent tax is continuing only so long as advances to the redemption fund on account of the purchase price of lands sold to the city have not been made, and that the city may not 'pyramid' the levies omitted in prior years, make manifest the preliminary conclusion that the petitioner is not entitled to have the respondents do more than levy a 10-cent tax each year until such levy has realized moneys sufficient to advance to the bond redemption fund the purchase price of all land sold to the city at delinquent tax sales. This duty the city has performed, and it is not shown that there are surplus moneys in the general fund available for transfer to the bond redemption fund for the payment of assessment installments falling due on

such lands subsequent to the delinquent tax sales. It follows that the petitioner is not entitled to a writ directing the respondents in respect to any tax levy or transfer of funds.

"There remains for determination the principal question whether the petitioner is entitled to a writ directing payment to it in full of the sum of $17,000 due on the bonds held by it. If it is not so entitled, or if it is not entitled to any partial payment in excess of the offer made by the district and refused, its petition in this respect must also be denied. State ex rel. Sturdivant Bank v. Little River Drainage Dist., 334 Mo. 753, 68 S.W.(2d) 671, 679.

"The petitioner relies mainly upon the provisions of section 3 of the Improvement Bond Act of 1915 (as amended by St.1929, p. 1823), and upon the decision in the case of Bates v. McHenry, 123 Cal.App. 81, 10 P.(2d) 1038, in support of its contention that it is entitled to full payment from the fund without regard to the probability that there will not be sufficient funds realized from all available sources to discharge in full the principal and interest on all unpaid bonds of the series.

"Section 3 of the act provides that the bonds and interest 'shall be paid at the office of the city treasurer of said municipality who shall keep a redemption fund designated by the name of said bonds, into which he shall place all sums received by him from the collection of the assessments made for the payment of the cost of the work or improvements upon which the said bonds are issued and of the interest and penalties thereon and from which fund he shall disburse and *pay the said bonds and the interest due thereon upon presentation of the proper bonds and coupons;* and under no circumstances shall said bonds or the interest thereon be paid out of any other fund. Said city treasurer shall keep a register * * * and shall cancel and file each bond and coupon so paid.' The petitioner contends that the italicized language of said section compels the same result as in the case of Bates v. McHenry, supra. That case involved section 52 of the California Irrigation District Law (St.1931, p. 172) which provided that upon presentation of *any* bond or interest coupon, payment should be made from the bond fund. In the opinion it was pointed out that the particular language of the act, together with the further provisions that unpaid bonds and interest coupons should be registered and bear interest from the date of registration and creating an unlimited continuing obligation of the district to levy sufficient taxes to discharge the obligation in full, distinguished the facts from such cases as Thomas v. Patterson, 61 Colo. 547, 159 P. 34, and Norris v. Montezuma Valley Irr. Dist. (C.C.A.) 248 F. 369, and compelled a conclusion that payment in full upon presentation was contemplated by the act, even though the fund was at the time insufficient to discharge all the matured claims against it. The same court rendering the opinion in the case of Bates v. McHenry, supra, arrived at a contrary conclusion in the case of Rohwer v. Gibson, 126 Cal.App. 707, 14 P.(2d) 1051,

following the cases distinguished in its previous opinion. The case of Rohwer v. Gibson involved the reclamation district laws of the state. There it was noted that the act involved made no provision for priority of payment where several bondholders were entitled to payment from a fund which was insufficient to pay all. It was further observed that the taxing power and consequently the fund realizable for application to bond principal and interest and out of which payment may be expected were limited to the benefits conferred upon the land assessed. A distinction was made between such a case, that is, where the general taxing power of the district was not made available to increase the fund applicable to discharge the principal and interest of the bonds, and Bates v. McHenry, supra, and such cases as Meyer v. Porter, 65 Cal. 67, 2 P. 884, and Meyer v. Widber, 126 Cal. 252, 58 P. 532, where the general taxing power of the district or other municipal body may be resorted to until all the bonds were fully paid. It was thereupon concluded that, where the sources of the bond redemption fund were so limited and were not fortified by the authority to resort to a general or 'inexhaustible' taxing power, the fund becomes a trust fund to be shared by all who hold claims against it without priority one over the other. Thus it was appropriately held that, where such a fund was insufficient to pay in full all who had claims against it, the petitioner was entitled only to share ratably with the other bondholders. Cases are cited in the Rohwer decision, 126 Cal. App. 707, at page 721, 14 P.(2d) 1051, to the effect that payment in full to the petitioner will not be ordered where it appears that the moneys constitute a trust fund by virtue of the fact that the fund is not replenishable by an unlimited or so-called inexhaustible taxing power, even though the fund at the time of bringing suit is sufficient for such payment but not sufficient to pay all the outstanding matured claims against it. The weight of the authority which recognizes the distinction between the ability to replenish the fund from an inexhaustible or general taxing power and the cases where the taxing power or tax-collecting capacity is limited, unless the statutory provisions are clearly to the contrary, is in accord with the result in Rohwer v. Gibson, supra. Those cases further recognize that such result is proper whenever the fund so characterized as a trust fund is shown to be insufficient, whether or not the district is actually insolvent, and regardless of the fact that previously matured bonds have been satisfied in full. See, also, State ex rel. Gillespie v. Carlton, 103 Fla. 810, 138 So. 612; Moran v. State ex rel. Montgomery, 111 Fla. 429, 149 So. 477; State ex rel. Sturdivant Bank v. Little River Drainage Dist., 334 Mo. 753, 68 S.W.(2d) 671, and State ex rel. Drainage Dist. No. 8 v. Duncan, 334 Mo. 733, 68 S.W.(2d) 679, overruling State ex rel. Bliss v. Grand River Drainage Dist., 330 Mo. 360, 49 S.W.(2d) 121; Groner v. United States (C.C.A.) 73 F.(2d) 126; Norris v. Montezuma Valley Irr. Dist. (C.C.A.) 248 F. 369; Morris, Mather & Co. v. Port of Astoria, 141 Or. 251, 15 P.(2d) 385; Lucas v. First Nation-

al Bank of Pawnee, 171 Okl. 606, 43 P.(2d) 752; Meyers v. City of Idaho Falls, 52 Idaho, 81, 11 P.(2d) 626; Rothschild v. Village of Calumet Park, 262 Ill.App. 96; note, 90 A.L.R. p. 717 et seq. The trust status of the fund has been considered appropriate where it is theoretically replenishable by a so-called inexhaustible taxing power, but the exercise of that power is rendered fruitless by reason of economic conditions resulting in a tax-collecting incapacity. Morris, Mather & Co. v. Port of Astoria, supra; see Moran v. State ex rel. Montgomery, supra, concurring opinion, 111 Fla. 432, 149 So. at page 478; State ex rel. Buckwalter v. Lakeland, 112 Fla. 200, 150 So. 508, 90 A.L.R. 704, opinion of Brown, J. dissenting in part."

We find little support in the California decisions for the proposition that that part of the contract sued upon, which is treated in the complaint as an absolute guaranty by the City, is not violative of the constitutional provision quoted above requiring an approving vote of the taxpayers.

■ The Bank criticizes the quotation from 19 R.C.L. § 281, p. 985, appearing in Seward v. Bowers, 37 N.M. 385, 24 P.(2d) 253, to the effect that where the municipality is liable *generally* an indebtedness is created within the meaning of the constitutional provision. But we believe that is a correct statement of the law, and it seems to be supported by the weight of authority. City of Aurora v. Krauss, supra; Deter v. City of Delta, 73 Colo. 589, 217 P. 67; Rorick v. Dalles City, 140 Or. 342, 12 P.(2d) 762;

Farmers' State Bank of Conrad v. City of Conrad, 100 Mont. 415, 47 P.(2d) 853; Hagler v. City of Salem, 333 Mo. 330, 62 S.W. (2d) 751.

The Supreme Court of Florida, in the case of Brash v. State Tuberculosis Board et al., 124 Fla. 652, 169 So. 218, 219, stated the rule: "Only where it can be clearly demonstrated beyond a reasonable doubt that a contemplated scheme of embarkation upon new capital ventures will not immediately or mediately, presently or in futuro, directly or contingently, operate to impose an added burden on the taxing power, or have the effect of impairing the public credit in futuro, will the consummation of such a debt incurring scheme be held authorized, absent the approving voice of the freeholders, as required by amended section 6 of article 9 of the Constitution, in the case of municipal, county, and district enterprises."

Williams v. Town of Dunnellon (Fla.) 169 So. 631, 635, is on all fours with Seward v. Bowers, supra, and the Florida court reached a like conclusion, but clearly distinguished that case from the general rule, and stated that the payment of the funds borrowed for making the improvements or extensions on the old plant are expressly confined to the net receipts from the operation of the utility—"a tax or property liability or charge being expressly excluded."

■ Many cases touching upon the constitutional question are reviewed in Seward v. Bowers, supra; State v. Connelly, 39 N.M. 312, 46 P.(2d) 1097, 100 A.L.R. 878;

and Varney v. City of Albuquerque, 40 N. M. 90, 55 P.(2d) 40, 106 A.L.R. 222. We are constrained to hold that the guaranty clause of the contract sued upon, which was entered into after the adoption of the constitution, and which it is admitted by the demurrer did not receive the approving vote of the taxpayers, is rendered inoperative by the dominant legal force of the constitutional provision quoted above.

■ The next question is whether or not the contract is severable. The severability of contracts is recognized in this state. Hodges et al. v. City of Roswell et al., 31 N.M. 384, 247 P. 310; Fancher et al. v. County Commissioners, 28 N.M. 179, 210 P. 237. The statute under which the sewer certificates were issued authorized the City to fix liens upon the property benefited by the sewer improvements and gave the sewer certificate holders the benefit of these liens. The execution of the power by the City, so far as authorized under the Constitution, is good, and void as to the excess. "The rule is that a lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time and for the same consideration. * * *" 13 C.J. 470, p. 512. See, also, 9 C.J. § 48, p. 31; 13 C.J. § 445, p. 502, § 447, p. 505, and § 553, p. 574; McCullough v. Clinch-Mitchell Const. Co. (C.C.A.) 71 F.(2d) 17; Nye et al. v. Chase Nat. Bank (C.C.A.) 34 F.(2d) 435; General Electric Supply Co. v. Youngman Electric Co. et al., 45 Ohio App. 395, 187 N.E. 249; Marshall v. Wittig, 213 Wis. 374, 251 N.W. 439;

Henry Pigot's Case, 77 English Reports, Reprint 1177; Denson v. Alabama Fuel & Iron Co., 198 Ala. 383, 73 So. 525.

The rule is stated in 3 McQuillin, Municipal Corporations (2d Ed.) § 1352, p. 940, as follows:

"The well settled rule that where an agreement is illegal in part, the part which is good may be enforced, provided it can be separated from the part which is bad, but otherwise the contract will be declared invalid in toto, applies to contracts made by municipal corporations. A municipal contract void as to an inconsiderable or insignificant part is not invalid in toto, especially where the city has received substantial benefits thereunder and cannot place the other party in statu quo.

"When a part of a divisible contract is ultra vires, but neither malum in se nor malum prohibitum, the remainder may be enforced, unless it appears from a consideration of the whole contract that it would not have been made independently of the part which is void."

In Manning v. Ellicott, 9 App.D.C. 71, it is stated: "This term in the contract is distinct and severable from the rest of the terms therein, and it was not inserted for the benefit of the defendant, but as security for the plaintiff; and it may well be rejected, and the other provisions of the agreement remain good and enforceable."

See, also, Presbury v. Fisher & Bennett, 18 Mo. 50; State ex rel. v. Tampa Water Works Co., 56 Fla. 858, 870, 47 So. 358, 19

L.R.A.(N.S.) 183; Glucose Sugar Refining Co. v. Marshalltown (C.C.) 153 F. 620; Bell v. Kirkland, 102 Minn. 213, 113 N.W. 271, 13 L.R.A.(N.S.) 793, 120 Am.St.Rep. 621; Spier v. Kalamazoo, 138 Mich. 652, 101 N.W. 846; Illinois T. & S. Bank v. Arkansas City, 76 F. 271, 22 C.C.A. 171, 34 L.R.A. 518; Fitzgerald v. Union Central Life Ins. Co. (C.C.A.) 42 F.(2d) 76; Roberts v. H. C. Whitmer Co., 46 Ga.App. 839, 169 S.E. 385; McCutcheon v. Terminal Station Comm., 88 Misc. 148, 150 N.Y.S. 850; Long Island R. Co. v. Sherwood (Sup.) 136 N.Y.S. 752; Whitbeck v. Estate of Ramsay, 74 Ill.App. 524; Mack v. Jastro, 126 Cal. 130, 58 P. 372; State of Ohio v. Findley, 10 Ohio, 51; Loomis v. Newhall, 15 Pick.(Mass.) 159; Miller v. Atchison, T. & S. F. Ry. Co., 97 Kan. 782, 156 P. 780; Livingston v. Chicago & N. W. Ry. Co., 142 Iowa, 404, 120 N.W. 1040; Faist v. Dahl, 86 Neb. 669, 126 N.W. 84.

■ The guaranty was merely unauthorized but involved no moral turpitude. It could be eliminated from the contract without affecting the right of the holders of the sewer certificates to the proceeds of the liens. The City had power to make a contract without the approving vote of the qualified taxpayers for sewer improvements so long as the obligation was confined to the property benefited by the improvements. A sewerage system in a city as large and thickly populated as Santa Fé is so essential to the public health that its continuous operation is a governmental duty. Const. art.

9, § 13, makes exception of such plants out of the debt limitation thereby imposed. The City could contract for sewerage improvement if it had funds available with which to pay for the same; and it has power to levy taxes. Barker v. State, 39 N.M. 434, 49 P.(2d) 246. The constitutional inhibition goes only to the contracting of a debt without the approving vote of the taxpayers.

■ In State v. City of Carlsbad, 39 N. M. 352, 47 P.(2d) 865, some of the bonds of the issue were preferred over others, but all the certificates of the issue involved here seem to be of a parity, and where no certificate is given preference over others of the same issue, the trust fund doctrine, stated in Kerr Glass Mfg. Corp. v. City of San Buenaventura, supra, applies, and the certificate holders are entitled to mandamus to compel the enforcement of the liens on the properties benefited by the sewer improvements, and the equitable distribution of the funds derived therefrom. 2 Dillon, Municipal Corporations (5th Ed.) § 893, p. 1387.

The learned trial court erred in sustaining the demurrer. The cause should be remanded to the district court with directions to set aside the judgment and overrule the demurrer, and it is so ordered.

BICKLEY and ZINN, JJ., concur.

SADLER and BRICE, JJ., did not participate.