**PUBLIC FINANCE CORPORATION OF KANSAS CITY, MISSOURI, NO. I, a Corporation, Respondent.**

**v.**

**Donald T. SHEMWELL, Appellant.**

**No. 23242.**

Kansas City Court of Appeals.

Missouri.

April 3, 1961.

Robert L. Shirkey, Rogers, Field, Gentry & Jackson, Kansas City, for appellant.

Gene R. Martin, Ennis, Browne & Martin, Kansas City, for respondent.

CROSS, Judge.

Plaintiff Public Finance Corporation sues defendant Donald T. Shemwell for a claimed unpaid deficiency on a note secured by a chattel mortgage on an automobile remaining after the repossession and sale of the pledged chattel. The case was tried by the court without a jury. Defendant appeals from a judgment in favor of plaintiff in the sum of $455.84.

Defendant principally contends that the judgment should have been in his favor because the note was without consideration. He says the transaction was an attempted sale of the automobile and that the note was given primarily as the purchase price. He urges that since no certificate of title was ever delivered to him by plaintiff, the entire transaction is void and the note is unenforceable.

A prior transaction shown in evidence preceded the present controversy. Defendant was the owner of a 1953 Kaiser automobile. He sold it to one Robert Cupp in January 1956 for the price of $600. Cupp borrowed the $600 from plaintiff on a note for that amount which defendant co-signed. The note was secured by a chattel mortgage given by Cupp on the automobile. Defendant received the $600 as the purchase price and delivered to Cupp the title certificate for the vehicle.

After reducing the loan to $478.27, Cupp defaulted in payments. Plaintiff attempted to locate him but was unable to do so, although his last place of residence was traced to a trailer court in Riverside. Plaintiff's assistant manager Fridel went there in person and found the car sitting beside a trailer. The trailer was locked and a neighbor said Cupp had moved away. Fridel said the car was unlocked and the keys were in it. He got in the car and unsuccessfully tried to start it. The car was left at the trailer court. In an affidavit of repossession plaintiff submitted to the Motor Vehicle Registration Department, it was stated by plaintiff's attorney and agent, on oath, as follows: "That Robert Cupp defaulted in payment of said indebtedness and Public Finance Corporation repossessed said motor vehicle by legal process or in accordance with the terms of said contract". The foregoing undisputed evidence leads to these conclusions: Cupp, in default, had abandoned the car at Riverside; plaintiff there took possession of the car, as was its right to do under the terms of Cupp's chattel mortgage; plaintiff thereafter had sole right of possession or disposition of the car and its title; Cupp thereafter had no right of possession and no legal authority to convey the automobile or to assign its title. We are thus brought to the transaction involved in this appeal.

Plaintiff informed defendant of the incidents we have noted and demanded payment of Cupp's note under his liability as a co-signer. After looking for and failing to find Cupp, defendant went to plaintiff's office to discuss the matter. Plaintiff extended him the option of either paying the Cupp note or taking possession of the car and executing his own note for it as a primary obligor. The latter option was chosen by defendant. He had in mind taking the car to use as a second automobile.

On February 18, 1957 defendant executed his promissory note payable to plaintiff in the amount of $704.64, *and a chattel mortgage on the automobile as security*. The note represented the following items: balance on Cupp loan $478.27; additional loan $77.44; life insurance premium $14.09; chattel mortgage recording fee 20¢; precomputed interest $134.64. The additional loan of $77.44 was advanced to plaintiff, in cash, to repair and rehabilitate the automobile, which Fridel stated was in "miserable condition". The entire amount was used and spent on the automobile, together with additional sums of defendant's own money.

Defendant testified that he executed the note at plaintiff's request and on its promise to get and deliver to him a title for the car. He stated that he would not have signed the note except for that assurance. Defendant said that after executing the note he received the keys from plaintiff's employee and was told he could take possession of the car. Plaintiff's employees and officers denied that defendant had been promised a title, that plaintiff ever had possession of the car or its keys, that plaintiff ever sold the car to defendant, and that plaintiff delivered the car to defendant. It was plaintiff's claim that it only promised to help defendant procure a title. Defendant's right to take possession of the car was not disputed.

Next morning defendant picked up the car at Riverside and took it to Stevenson's garage for repairs. He had "cleaned it all out, and had the fenders and floor and glass fixed, and had all new valves in it, new plugs and points and everything", and installed a rebuilt battery. It was then in

"a lot better condition". He took the car from Stevenson's garage to his home and never again drove it. He stated "I never moved that car one inch". While it was in his possession he washed it and periodically started the motor to charge the battery.

Defendant made the first five note payments in March through July, 1957, each in the sum of $29.36, and the additional sum of $2. He stated that during those five months plaintiff continued to represent to him "they" were going to get him the title—"about three or four times a month". Defendant testified he called plaintiff on an average of twice a week about the car title; his wife called them; "I called them from work, and at home both, I even called Mr. Meier at his home". Defendant made no further monthly payments after July 1957, but continued to call plaintiff and demand the title certificate. Three employees of plaintiff admitted receiving such calls from defendant. Defendant informed plaintiff he wasn't going to pay any more until he got a title. Plaintiff continued to demand the payments. Finally defendant informed plaintiff that unless the certificate was delivered by a certain date (27 days thence) he wasn't going to pay any more on the automobile. He called plaintiff's office on the designated day, which appears to have been in November 1957, nine months after signing the note and chattel mortgage, and was informed that the certificate still was not available. About ten days later plaintiff tendered the title but defendant refused to accept it. He testified, "I had already got an attorney. I told them they would have to talk to him. I had given them a deadline, I had waited all this time on this title, and I wasn't going back on my word on the deadline". Defendant surrendered the car and keys into plaintiff's possession. Plaintiff sold the car seven months later.

The official records of the Motor Registration Department show that on June 28, 1958 plaintiff assigned to one Nathaniel Mosby, as purchaser, the repossessed certificate of title No. 8065533 that was tendered to defendant in November, 1957. Those records also show that on the same day, June 28, 1958, Mosby executed his application for a title to the automobile in which he stated that the sale price was $495. The application showed the source of Mosby's title to be the repossessed Certificate No. 8065533.

Notwithstanding the official records, plaintiff's employees testified verbally, with no corroboration by the alleged vendees, that there were two intervening sales of the automobile prior to the sale to Mosby—all on the same day. The testimony was that (1) Public Finance first sold the car for the price of $100 to Ray DeAtley Motor Sales Company, purchaser number one; (2) DeAtley sold it to Enterprise Motors, purchaser number two; (3) Enterprise Motors sold it to Nathaniel Mosby, purchaser number three, for $495. Plaintiff credited the note in suit with the sum of $100 and brought this suit for the claimed balance due.

Although plaintiff made a prima facie case by introducing the note in evidence, we believe that defendant has sustained the burden of proof to establish his affirmative defense that the note is without consideration. From the evidence we are convinced that the transaction between the parties was the intended sale of an automobile as defendant testified. Plaintiff's manager Meier, who negotiated with defendant, testified that the reason for the execution of the note was because Shemwell had been told: "either he could pay the amount that he was liable for as a co-maker, or he could take possession of the car, and execute a new note for that and have the automobile". At that time and during all negotiations with defendant plaintiff was in legal possession of the car and was able to confer both its possession and title certificate to defendant.

In our opinion the statement to defendant that he could "take possession of the car"

and "have the car" if he would "execute a new note" amounts to an offer of sale  That proposal included two significant essentials of the sale of a chattel: (1) transfer of possession and (2) a price.  When Shemwell accepted the offer and agreed to sign the new note a *sales agreement* was effected.  The term "sale" has been defined in Freund Motor Co. v. Alma Realty & Investment Co., 235 Mo.App. 587, 142 S.W.2d 793, 795, as "* * * a contract to give and to pass rights of property for money, which the buyer pays or promises to pay to the seller for the thing bought or sold * * *".  In this case the consideration for the sale is defendant's promise to pay plaintiff the sum of $478.27 as evidenced by the note and an accompanying memorandum signed by defendant.  That assumed promissory obligation is an ascertainable and identifiable money price consideration, sufficient to support the transaction, despite plaintiff's contention to the contrary.  In return, the consideration flowing from plaintiff was also a promise—to give defendant possession of the automobile *and a certificate of title*.

Plaintiff argues that defendant's note was executed merely to "refinance" the Cupp note balance.  We are not persuaded that the note transaction before us is a renewal or extension of the former obligation.  The evidence clearly shows the intention of the parties to enter into an entirely new (although wholly abortive) sale agreement.  Public Finance completely abandoned the Cupp transaction and forgave the obligation as to Cupp.  Defendant then, solely and alone, assumed the new obligation in its entirety, in reliance upon plaintiff's promise to sell him the car and lawfully transfer the title.  Defendant became a purchaser with primary liability—not a co-signer.  The subject matter of the contract had metamorphosed from a loan into a sale.  In agreeing to purchase the car defendant gave up two substantial rights: (1) contribution from Cupp, and (2) the reduction of his liability on the Cupp note by credit of the proceeds of a sale of the automobile which had been repossessed by plaintiff for such purpose.  Plaintiff waived that benefit when he elected to buy the automobile as his own property, for his own use.  The contract between the parties is so materially at variance with the terms of the prior transaction in its subject matter, undertakings, and the obligations imposed by it, that we cannot consider defendant's prior obligation as supporting consideration for the note in suit.

We believe that plaintiff is estopped to assert there was no sale of the automobile to defendant.  Plaintiff unequivocally recognized defendant's intended absolute ownership by (1) giving defendant possession of the car; (2) promising to deliver a certificate of title; (3) exacting and accepting from defendant a chattel mortgage on the automobile; (4) applying the credit of $100.00 to defendant's note after selling the automobile following its surrender by defendant.  A chattel mortgage is predicated on ownership.  Defendant could have received ownership of the automobile only from plaintiff, because Cupp was out of possession and naked of any power to confer possession.  "The giving of a chattel mortgage implies that title is in the mortgagor".  International Harvester Co. v. Threlkeld, 226 Mo.App. 600, 44 S.W.2d 182, 184.

█  The automobile sales transaction, (as agreed upon and intended), completely failed and is necessarily considered as fraudulent and void, because Public Finance failed to deliver defendant a certificate of title as required by Sec. 301.210, V.A.M.S., which provides: "In the event of a sale or transfer of ownership of a motor vehicle * * * for which a certificate of ownership has been issued the holder * * * shall endorse on the same an assignment thereof * * * and deliver the same to the buyer at the time of the delivery to him of said motor vehicle * * * and the sale of any motor vehicle * * * without the assignment of such certificate of ownership, shall be fraudulent and void".  The quoted statute applies to used vehicles.  It is essentially a·police regulation of the highest type and

absolute technical compliance is necessary. Such provisions are rigidly enforced and there are no exceptions to conform to intentions. Bordman Investment Co. v. Peoples Bank of Kansas City, Mo.App., 320 S.W.2d 72; Allstate Ins. Co. v. Hartford Accident & Indemnity Co., Mo.App., 311 S.W.2d 41; Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534, 71 A.L.R.2d 258. Since the automobile sale in this case was absolutely void, there is no consideration for the note representing the sale price. Morgan v. Mulcahey, Mo.App., 298 S.W. 242; C. I. T. Corp. v. Byrnes, Mo.App., 38 S.W.2d 750.

■ We consider the entire contract between the parties as invalid and that the note signed by defendant in the stated sum of $704.64 is wholly without consideration and unenforceable in the hands of plaintiff. The very essence of the contract was the sale of the automobile. The item of $77.44 in cash received by defendant for repairs of the car was only an incident to the sale—meaningless to defendant unless he received possession and use of the vehicle. If the sale had been lawfully completed, as plaintiff agreed, the repairs would have benefited defendant. Since the sale aborted, through plaintiff's fault, defendant received no benefit. Instead, plaintiff was the recipient of the enhanced value of the car effected by the use of the money. In effect, defendant was plaintiff's agent in receiving the money and using it to restore the automobile to its "lot better condition". For those reasons we think there was a failure of consideration for the cash item of $77.44. We further observe that the contract is entire and not divisible. The contract for the automobile sale was void and the consideration for its purchase was illegal. Since the automobile was essential to the beneficial use of the $77.44 loaned to defendant and constituted by far the greater portion of the note's consideration, the invalid part of the note (car purchase price) was inseparable from the valid part (cash loan). As a result the entire contract is invalid. Schroeder v. Zykan, Mo.App., 255 S.W.2d 105. In Hagler v. City of Salem, 333 Mo. 330, 62 S.W.2d 751, the supreme court held that if it appears from all the evidence and the manifest intention of the parties that a contract would not have been made independently of the invalid part, the contract as a whole must be held invalid. In this case it is unbelievable that defendant would have borrowed $77.44 to fix up the automobile unless he intended to be its owner.

■ Plaintiff makes the point that defendant's repudiation of the transaction was not within a reasonable time and that defendant failed to tender or return what he had received from the transaction. Since on this appeal defendant is not asking for the return of any money he has paid plaintiff, the point becomes meaningless. Defendant asks only for relief from the judgment against him and from enforcement of the note. It is conclusively shown that defendant never received a certificate of title. The law affords him the relief he asks by the effect of Section 301.210 V.A.M.S. The case of Hymer v. Dude Hinton Pontiac, Inc., Mo.App., 332 S.W.2d 467, and other cases involving demands for a return of consideration, are not in point.

Plaintiff makes the charge that defendant hopes "to absolve himself from a just obligation by simply returning the automobile and keeping all the money, and thus becoming unjustly rich at plaintiff's expense". The accusation is not supported by the facts. "All the money" referred to by plaintiff consists of two items, the first of which was the $600 he received from Cupp as the purchase price of his automobile, for which he gave up the vehicle's ownership, in return. The other item is the $77.44 loaned to defendant to repair and restore the car and used for that purpose. That sum has been fully paid, in fact overpaid, by defendant's five monthly installments and his further payment of $2, totalling the sum of $148.80 received by plaintiff.

When a party charges his adversary with unconscionable conduct, the court may well examine the conduct of *both* parties. Hav-

ing done this, we find that plaintiff—not defendant—is the offender. The record discloses acts on the part of Public Finance Corporation indicating bad faith and law violation. We note first plaintiff's breach of its agreement with defendant to sell him the repossessed automobile and legally transfer the title—a dereliction of promise for which there is no reason or excuse. We next observe an item of unjust enrichment on the part of Public Finance. Although the note before us is unenforceable and without lawful consideration, plaintiff received and now holds the total sum of $148.80 paid by defendant in reliance upon the sales agreement. The record is barren of any evidence to show why plaintiff delayed seven months in selling the automobile after taking it from defendant's possession.

The ensuing items are of graver import. If plaintiff actually sold the car to DeAtley Auto Sales, as its employees testified under oath, a misdemeanor crime was committed, because no title was delivered. If, in turn, (1) DeAtley Auto Sales actually sold the car to Enterprise Motors, and (2) Enterprise Motors actually sold it to Nathaniel Mosby, as plaintiff's employees testified under oath, then plaintiff aided and abetted two additional misdemeanor crimes—for the reason that plaintiff assigned the repossessed certificate of title No. 8065533 *directly* to Mosby and by-passed the DeAtley Auto Sales and Enterprise Motors sales transactions, thereby participating in the suppression and concealment of the two intervening sales. In the alternative, if the DeAtley Auto Sales and Enterprise Motors sales transactions are fictions, plaintiff has committed gross fraud in receiving $495 from purchaser Mosby, but crediting the note with only $100.

The record of this case reflects the conduct and demeanor of plaintiff's employees who acted on its behalf and who testified at the trial. The credibility of plaintiff's evidence is not enhanced by the reflection. In Gershon v. Ashkanazie, 239 Mo.App.

1012, 199 S.W.2d 38, 47, this court said: " * * * we are further of opinion that the conduct and demeanor of the defendants, as shown by the record in this case, afford a much better index of character and credibility than a mere possible casual view of them by the trial court". We have resolved the disputed fact issues in favor of defendant.

In view of our findings the judgment is reversed.

All concur.